

1  Christopher Lazzaro
   1302 Vallejo Street
2  Santa Rosa, CA 95404
   Telephone: (831) 241-2738
3  Email: chrisflazzaro@gmail.com
   Plaintiff, Pro Se
4

5

6

7

8              UNITED STATES DISTRICT COURT
9             NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
10

11  CHRISTOPHER LAZZARO,              CASE NO **CV25    3566**
                                                          **CRB**
12         Plaintiff,

13      vs.                           **COMPLAINT FOR VIOLATIONS OF:**
                                       15 U.S.C. 1692 *et seq.*
14  ACCELERATED INVENTORY                Cal. Civ. Code § 1788 *et seq.*
    MANAGEMENT, LLC,
15  SCOTT & ASSOCIATES, P.C., and
16  ROBERT KAYVON II                  **DEMAND FOR JURY TRIAL**

17         Defendants

18         COMES NOW Plaintiff CHRISTOPHER LAZZARO ("Lazzaro"), proceeding pro se,

19  and brings this action against ACCELERATED INVENTORY MANAGEMENT, LLC

20  ("AIM"), a debt buyer, SCOTT & ASSOCIATES, P.C. ("Scott"), a lawsuit mill producing suits

21  for AIM, and ROBERT KAYVON II ("Kayvon"), Scott's attorney and debt collector who files

22  such suits prematurely (collectively, "Defendants") for a predatory collections scheme violating

23  the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the California

24  Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*

    Complaint – Case No:

                              1

1    Plaintiff seeks statutory, actual, and punitive damages, injunctive relief, declaratory

2  judgment, costs, interest, and potential class-wide relief.

3

4                                **INTRODUCTION**

5        1.      On December 13, 2024, Defendants filed a lawsuit against Plaintiff in the

6  Superior Court of California, County of Sonoma (Case No. 24CV07542) ("Sonoma Suit") over

7  an alleged debt they acquired. Defendants failed to provide the legally required notice pursuant

8  to 15 U.S.C. § 1692g(a), resulting in a premature lawsuit as prohibited by Cal. Civ. Code §

9  1788.15(a).

10        2.      Plaintiff was blindsided by Defendants' litigation, served December 17,

11  2024—days before Christmas—replacing holiday joy with shame and distress. Defendants'

12  methods exploit consumers with defective notices and intimidation, turning courts against them.

13  The FDCPA and RFDCPA were enacted to protect consumers from such abuse, not to be

14  misused by dishonest collectors as a means to justify predatory tactics and premature lawsuits,

15  hiding behind a single sham mailing, as the Defendants do—and have been doing—here.

16                                **JURISDICTION**

17  **Federal Question Jurisdiction**

18        3.      This Court has jurisdiction over FDCPA claims under 28 U.S.C. § 1331, which

19  states "district courts shall have original jurisdiction of all civil actions arising under the

20  Constitution, laws, or treaties of the United States." Defendants targeted Plaintiff over an alleged

21  LendingClub Corporation ("LendingClub") debt, but in doing so violated several federal laws,

22  including 15 U.S.C. § 1692g(a) (requiring notice), § 1692e (deception), and § 1692f (unfair

23  practices).

24

Complaint – Case No:

1 **Supplemental Jurisdiction**

2     4.     Supplemental jurisdiction over RFDCPA claims (*e.g.*, Cal. Civ. Code § 1788.17

3 (requiring FDCPA adherence) or § 1788.15(a) (prohibits suits without notice)) arises under 28

4 U.S.C. § 1367(a), which provides "district courts shall have supplemental jurisdiction over all

5 other claims that are so related to claims in the action within such original jurisdiction that they

6 form part of the same case or controversy," sharing a "common nucleus of operative fact" with

7 FDCPA claims. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

8 **ARBITRATION IS INAPPLICABLE**

9     5.     The LendingClub loan is governed its Borrower Agreement, a copy of which is

10 attached hereto as Exhibit A. It includes an Arbitration Agreement (hereinafter, "Agreement")

11 purporting to require arbitration of disputes "relating to or arising out of the Borrower

12 Agreement" (Ex. A, Arbitration Agreement, p. 4, § 16(a)). Plaintiff asserts this Agreement does

13 not bar this Court's jurisdiction over Plaintiff's claims for the following reasons:

14 **Sonoma Suit: Defendants' Litigation Choice Waives Arbitral Rights**

15     6.     Defendants waived their right to enforce the Agreement by initiating litigation

16 with the Sonoma Suit (*infra* ¶¶ 52-59) and pursuing coercive settlement offers (*infra* ¶¶ 70-71),

17 actions fundamentally inconsistent with the Agreement's mandate for arbitration as the "sole and

18 exclusive forum for resolutions of a Claim" (Ex. A, Arbitration Agreement, p. 3, § 16(a)). Their

19 statutory violations underscore this waiver. Plaintiff's good-faith efforts to resolve the suit's

20 defects, including multiple requests to dismiss in favor of settlement, were rebuffed, evidencing

21 Defendants' bad-faith intent to leverage judicial judgment over arbitration. Even if Defendants

22 claim waiver of arbitration with the Sonoma Suit, their active litigation and attempts to use that

23 litigation for negotiation reflect substantial conduct inconsistent with arbitration, demonstrating

24 their sole intent to seek judicial judgment.

Complaint – Case No:

1    7.    Defendants' intent to "seek judicial judgment" by filing the Sonoma Suit and

2  pursuing coercive settlement offers is "inconsistent with the agreement to arbitrate." *Van Ness*

3  *Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988). Their actions—filing,

4  serving, and leveraging the Sonoma Suit—constitute waiver, securing this Court's jurisdiction.

5    8.    The Supreme Court's ruling in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418

6  (2022) eliminates the need to show prejudice, focusing solely on Defendants' litigation conduct,

7  stating "prejudice is not a condition of finding that a party, by litigating too long, waived its right

8  to stay litigation or compel arbitration under the FAA." *Morgan* further prohibits "novel rules to

9  favor arbitration over litigation" (*id.* at 418), ensuring no special deference to arbitration here.

10    9.    Plaintiff's strategic motion to compel arbitration in the Sonoma Suit is a defensive

11  strategy only in response to Defendants' unwillingness to dismiss their premature and baseless

12  litigation and settle amicably, and is no implication that arbitration governs this federal action,

13  which asserts non-arbitrable statutory violations (*e.g.*, 15 U.S.C. §§ 1692g(a), 1692e, 1692f). The

14  Sonoma Suit targets the loan, while this federal action focuses on Defendants' collection abuses.

15  Nonetheless, Defendants' litigation waiver of arbitration applies to both.

16  **Sonoma Suit: Defendants' State Action Is No Bar To FDCPA Claims**

17    10.    In *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 807 (N.D. Cal. 2008),

18  where Plaintiff alleged FDCPA violations from misrepresentations in a state court debt collection

19  complaint, Defendants sought dismissal, claiming such complaints were exempt from FDCPA

20  scrutiny, however, this Court found:

21      [T]he current legal landscape does not ultimately provide support for dismissal of
        Plaintiff's claims on the grounds that state court complaints, as a matter of law,
22      are not subject to FDCPA regulation.
    [...]
23      The Court notes that the statutory language of the FDCPA does not support a

24

Complaint – Case No:

4

finding that state court complaints are, as a matter of law, excluded from its reach… [T]here is also no express indication in the statutory language that state court complaints are, as a matter of law, excluded from the statute's reach.

*Id.* at 807.

11.    Thus, the Sonoma Suit does not compel arbitration, or warrant dismissal, of Plaintiff's FDCPA claims, which address Defendants' abusive collection practices, not the loan.

**Sonoma Suit: Debt Irrelevant to FDCPA Claims**

12.    Moreover, the Sonoma Suit's alleged debt does not bar Plaintiff's FDCPA claims, as "a debtor has standing to complain of violations of the Act, regardless of whether a valid debt exists." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Thus, arbitration of the debt is irrelevant to Plaintiff's statutory claims, which stand properly before this Court.

**Sonoma Suit: Defendants' Burden to Enforce Arbitration**

13.    Defendants filed the Sonoma Suit—attached hereto as Exhibit F—with only a Promissory Note (Ex. F, Promissory Note, pp. 7–10), omitting the Borrower Agreement and Arbitration Agreement despite references therein. This bad-faith tactic obscured Plaintiff's dispute rights, estopping them from enforcing arbitration now. This procedural flaw undermines any potential arbitration claim and reinforces that Plaintiff's statutory claims belong in this Court. Even if Defendants now produce the Borrower Agreement, their initial failure to provide it prejudiced Plaintiff by entirely concealing arbitration rights, equitably estopping them from compelling arbitration.

14.    Moreover, the party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

15.    Additionally, "[u]nder California law, the party seeking to compel arbitration has the burden of proving … by a preponderance of the evidence" the existence of an agreement to

Complaint – Case No:

5

1    arbitrate. *Newton v. Am. Debt Servs., Inc.*, 854 F.Supp.2d 712, 721 (N.D. Cal. 2012) (citing

2    *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

3         16.    Defendants' bare Promissory Note evidences nothing but a mere reference to an

4    Arbitration Agreement. Blindsided by the Sonoma Suit, Plaintiff—a pro se litigant and

5    unsophisticated consumer—took the initiative to uncover and provide the full Borrower

6    Agreement, to assert Plaintiff's rights. Defendants—sophisticated attorneys and seasoned debt

7    collectors—did nothing, failing to possess, produce, or even acknowledge the Agreement despite

8    its clear reference in their own Promissory Note. This bad-faith omission prejudiced Plaintiff,

9    leaving Plaintiff unaware of arbitration options.

10   **Omission of Entire Agreement Estops Arbitration**

11        17.    Defendants' failure to provide the Borrower Agreement with the Sonoma Suit and

12   or to the Plaintiff concealed arbitration terms, despite references therein their own Promissory

13   Note. The Borrower Agreement defines arbitration terms and under Section 9 constitutes "the

14   entire agreement between you and us" governing "any loan" (Ex. A, Entire Agreement, p. 2, §

15   9). Their bad-faith omission concealed these terms, violated Section 9's mandate, and waived

16   their right to enforce arbitration as the "sole forum" (Ex. A, Arbitration Agreement, p. 4, §

17   16(a)), estopping them from compelling arbitration and confirming this Court's jurisdiction.

18   **Statutory Right to Judicial Remedy**

19        18.    Plaintiff's FDCPA and RFDCPA claims arise from Defendants' independent

20   statutory violations under 15 U.S.C. § 1692 *et seq.* and Cal. Civ. Code § 1788 *et seq.*, not the

21   Borrower Agreement's terms. These claims target collection abuses and do not rely on the

22   Borrower Agreement's terms, despite its broad language.

23        19.    While Plaintiff acknowledges the breadth of the Borrower Agreement, its broad

24   language should only apply to disputes "relating to the interpretation and performance of the

Complaint – Case No:

6

1   contract itself." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011)

2   (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Construction Co.*, 708 F.2d 1458 (9th

3   Cir.1983)), *certiorari denied*, 132 S. Ct. 1862 (2012). Plaintiff's FDCPA and RFDCPA torts,

4   asserting statutory rights to judicial remedy, stand independently, neither relating to the

5   performance nor requiring any interpretation of the Borrower Agreement.

6   **Non-Signatory and Assignee Limitations**

7       20.    Defendants, as non-signatory debt collectors, cannot enforce the Agreement. The

8   Borrower Agreement states: "The parties acknowledge that there are no third-party beneficiaries

9   to this Borrower Agreement" (Ex. A, Miscellaneous, p. 3, § 15). This disclaimer precludes non-

10  signatories from enforcing arbitration.

11      21.    Moreover, AIM has yet to prove assignee status (Ex. A, Assignment, p. 2, § 8),

12  only providing a scant and dateless "Chain of Title" (Ex. F, Chain of Title, p. 17) with no bill of

13  sale, receipt, or any other proof of ownership.

14      22.    Scott and Kayvon, as non-assignees, have no arbitral rights.

15      23.    The Supreme Court has held that a nonparty's ability to enforce an arbitration

16  agreement depends on "traditional principles of state law." *Arthur Andersen LLP v. Carlisle*, 556

17  U.S. 624, 631 (2009).

18      24.    The Borrower Agreement "is a contract made under the law of the State of Utah

19  (Ex. A, Controlling Law, p. 3, § 15)." In Utah, "[a] third party may claim a contract benefit only

20  if the parties to the contract clearly express an intention 'to confer a separate and distinct benefit'

21  on the third party." *Bybee v. Abdulla*, 189 P.3d 40, 49 (Utah 2008) (quoting *Rio Algom Corp. v.

22  Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980)). "[I]t is not enough that the parties to the contract

23  know, expect or even intend that others will benefit from the contract." *Carmona v. Travelers

24  Cas. Ins. Co. of Am.*, 428 P.3d 65, 69 (Utah Ct. App. 2018) (quoting *SME Indus., Inc. v.

Complaint – Case No:

7

1  *Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 684 (Utah 2001)). Rather, "[t]he

2  contract must be undertaken for the [third party's] direct benefit and the contract itself must

3  affirmatively make this intention clear." *Id.* (quoting *SME Indus., Inc.*, 28 P.3d at 684).

4  Therefore, under Utah law and considering the Borrower Agreement's explicit disclaimer of

5  third-party beneficiaries, Defendants, as non-signatories, cannot enforce the arbitration clause.

6       25.    Even under California law Defendants cannot enforce the Agreement, as it lacks

7  the "clear intent" to benefit third-party debt collectors. The Borrower Agreement's "no third-

8  party beneficiaries" clause (Ex. A, Miscellaneous, p. 3, § 15) precludes Scott and Kayvon—and

9  even AIM as a potential assignee—from enforcing arbitration. Utah law controls, yet California

10  law agrees. "For a third party to qualify as a beneficiary of a contract, the contracting parties

11  must have intended to benefit that third party, and their intent must appear from the terms of the

12  contract.". *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 829 (2019). The Borrower Agreement

13  evinces no such intent to benefit third-party debt collectors.

14       26.    Even if AIM proves assignee status under the Borrower Agreement's provision

15  that it "shall apply to any assignee or subsequent holder of the loan" (Ex. A, Miscellaneous, p. 3,

16  § 15), and claims that arbitration applies to Plaintiff's independent FDCPA and RFDCPA torts, it

17  should be rejected. The FDCPA and RFDCPA impose independent statutory duties on debt

18  collectors to protect consumers and ensure access to judicial remedies. As third-party debt

19  collectors, Defendants are tasked with complying with these statutes, which prioritize consumer

20  protection over contractual limitations. The Agreement's "no third-party beneficiaries" clause

21  further weakens Defendants' ability to enforce the Agreement against Plaintiff's statutory claims,

22  as it limits their contractual rights. Allowing Defendants to use arbitration to shield alleged

23  misconduct would undermine the FDCPA and RFDCPA's purpose of holding debt collectors

24  accountable in court.

Complaint – Case No:

27.    Even if AIM arbitrates, Scott and Kayvon, as non-signatories, remain liable in court for their independent actions and FDCPA and RFDCPA violations.

28.    Further, equitable estoppel does not compel arbitration here, as Plaintiff's FDCPA and RFDCPA claims are independent of the Borrower Agreement's terms. The Ninth Circuit has held that equitable estoppel applies to compel arbitration by a non-signatory only when "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Plaintiff's claims arise from Defendants' illegal collection tactics, not the Borrower Agreement, thus rendering equitable estoppel inapplicable.

**Borrower Agreement Is Unconscionable**

29.    The Borrower Agreement is unconscionable under Utah law, its governing jurisdiction, due to the cumulative effect of its adhesive nature, lack of mutuality in the arbitration clause, and the imposition of unreasonably burdensome cost provisions. The adhesive nature of the agreement's arbitration clause further renders it unenforceable under 9 U.S.C. § 2. This conclusion is only further supported by California law, which would also deem the agreement unconscionable.

30.    The Borrower Agreement demands: "BY ELECTRONICALLY SIGNING THIS BORROWER AGREEMENT, YOU HAVE SIGNIFIED YOUR AGREEMENT TO THESE TERMS" (Ex. A, Borrower Agreement, p. 1)—a digital ultimatum that highlights the agreement's procedural unconscionability. This language, presented at the outset and without any indication of negotiable terms, underscores the significant imbalance in bargaining power between the lender and borrower.

31.    Moreover, the Borrower Agreement's arbitration clause demonstrates a lack of mutuality that clearly favors LendingClub, undermining fairness. While LendingClub retains the

Complaint – Case No:

option to pursue small claims in court, Plaintiff is compelled to arbitrate all claims (Ex. A,

Arbitration Agreement, p. 4, § 16(a)). This skewed structure imposes a significant burden on

Plaintiff, denying them the same access to judicial recourse as LendingClub.

32.    Utah courts void contracts with "an absence of meaningful choice on the part of

one of the parties together with contract terms which are unreasonably favorable to the other

party.'" *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996) (quoting *Williams v. Walker-Thomas

Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

33.    The Ninth Circuit has addressed such "take it or leave it" contracts, "with no

opportunity ... to negotiate its terms," as adhesive. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d

916, 922 (9th Cir. 2013).

34.    Even the California Supreme Court, in *Rosenthal*, 14 Cal. 4th 394 at 426, deemed

a similar agreement adhesive despite the arbitration clause being "in bold print in the center of

the page's right column of text." Further, "[a]n arbitration agreement imposed in an adhesive

context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to

arbitrate all claims." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 120

(2000).

**Public Injunctive Relief**

35.    Plaintiff seeks public injunctive relief to halt Defendants' systemic practices,

including deficient notices and premature lawsuits, which are non-arbitrable. See *Blair v. Rent-

A-Ctr., Inc.*, 928 F.3d 819, 830–31 (9th Cir. 2019) (public injunctive relief not preempted by

FAA). Accord *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956, 393 P.3d 364, 371 (2017) (holding

arbitration waivers of public injunctions unenforceable under California law). Defendants'

systemic misconduct remains unshielded by Federal Arbitration Act (FAA) preemption.

Compelling arbitration would undermine the public enforcement scheme of the FDCPA and

Complaint – Case No:

10

1  RFDCPA, designed to protect consumers from unfair and deceptive debt collection practices.

2  Public injunctions protect the public at large and are not suited for private arbitration, as

3  arbitrating such claims would strip this Court of its oversight to ensure compliance with these

4  critical statutes.

5  **Public Policy Considerations**

6      36.    Courts are the proper venue for Plaintiff's FDCPA and RFDCPA claims, ensuring

7  judicial oversight to stop Defendants' abusive practices. "The FDCPA was enacted as a broad

8  remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to

9  insure that those debt collectors who refrain from using abusive debt collection practices are not

10  competitively disadvantaged, and to promote consistent State action to protect consumers against

11  debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir.

12  2011) (quoting 15 U.S.C. § 1692(e)). Even if the Agreement's language could be construed to

13  cover FDCPA claims, enforcing it would contravene the FDCPA's public policy goals, rendering

14  the Agreement unenforceable for these claims.

15      37.    For FDCPA claims, Congress "encouraged private enforcement by permitting

16  aggrieved individuals to bring suit as private attorneys general," with "statutory damages, and

17  attorney's fees and costs" awarded in court. *Gonzales*, 660 F.3d 1055 at 1061. This deliberate

18  creation of a private right of action to enforce a consumer protection statute suggests a

19  Congressional intent that these claims be heard in a judicial forum. Forcing these statutory

20  claims into arbitration risks undermining the FDCPA's enforcement and harming consumers.

21      38.    "Nevertheless, an arbitration agreement may not function so as to require

22  [individuals] to waive potential recovery for substantive statutory rights in an arbitral forum,

23  especially for statutory rights established 'for a public reason'" *Davis v. O'Melveny & Myers*,

24

Complaint – Case No:

1  485 F.3d 1066, 1087 (9th Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

2  20, 28 (1991).

3  **Conclusion**

4       39.    Thus, Plaintiff's claims, being non-arbitrable and grounded in statutory rights,

5  being independent of the unenforceable arbitration agreement, stand properly before this Court.

6  Defendants' litigation waiver and the need for judicial oversight further compel this Court to

7  retain jurisdiction over Plaintiff's claims for relief.

8  **VENUE**

9  **Venue**

10       40.    Venue is proper under 28 U.S.C. § 1391(b)(2), which states "[a] civil action may

11  be brought in a judicial district in which a substantial part of the events or omissions giving rise

12  to the claim occurred," as Defendants' violations—deficient notices and premature

13  litigation—targeted Plaintiff in Santa Rosa, Northern District of California. See *Cortez Byrd*

14  *Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198 (2000).

15  **PRO SE STATUS**

16       41.    As a pro se litigant, Plaintiff seeks leniency under *Haines v. Kerner*, 404 U.S.

17  519, 520–21 (1972).

18  **PARTIES**

19       42.    Plaintiff CHRISTOPHER LAZZARO ("Lazzaro") is a resident of Santa Rosa,

20  California, and a "consumer" under 15 U.S.C. § 1692a(3).

21       43.    Defendant ACCELERATED INVENTORY MANAGEMENT, LLC ("AIM") is a

22  licensed debt buyer (California Debt Collector License 10105-99) at 6001 W. William Cannon

23  Dr., Suite 102, Austin, TX 78749. AIM pursues junk debts and employs Scott to collect these

24  debts through predatory tactics and premature lawsuits.

Complaint – Case No:

12

44.     Defendant SCOTT & ASSOCIATES, P.C. ("Scott") is a licensed debt collector (California Debt Collector License 12242-99) at 1120 Metrocrest Dr., Suite 100, Carrollton, TX 75006. Scott employs Defendant Robert Kayvon II ("Kayvon") as an attorney, and within that role performs debt collection acts.

45.     Defendant ROBERT KAYVON II ("Kayvon") is a licensed attorney (CA SBN 250283) at 1902 Park Ave, Apt 315, Los Angeles, CA 90026-7030. Kayvon works for Scott as an attorney and as a debt collector, further bragging on LinkedIn about "litigating a large volume of collections cases." Kayvon filed the Sonoma Suit, signed it, and pursued deceptive settlement offers, with threats and misrepresentations, clearly acting as a debt collector under 15 U.S.C. § 1692a(6), which states:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The Supreme Court, in *Heintz v. Jenkins*, 514 U.S. 291, 294, 299 (1995), clarified this, explaining:

> In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts.
>
> [...]
>
> For these reasons, we agree with the Seventh Circuit that the Act applies to attorneys who "regularly" engage in consumer debt collection activity, even when that activity consists of litigation.

## **FACTUAL ALLEGATIONS**

### **Overview**

46.     Since February 9, 2024, Defendants engaged in a predatory collections process against Plaintiff that unfolded in distinct stages. It began with a "validation notice" sent in an envelope lacking sender identification, which Plaintiff contends was ineffective. This was

Complaint – Case No:

1   followed by an "intent to sue" letter from an unknown sender, which Plaintiff alleges was

2   deceptive and intimidating. The process then escalated into a lawsuit filed in Sonoma County,

3   which Plaintiff asserts was premature and unjustified, and which Defendants have continued to

4   leverage through settlement offers.

5        47.    Plaintiff's USPS logs (Exhibits C and E, as examples) confirm Defendants' only

6   pre-suit efforts were two flimsy envelopes: one anonymous and one from an unknown sender.

7   For the "least sophisticated consumer," discarding these scant attempts and vague envelopes,

8   amidst a flood of unsolicited junk mail, was a reasonable response.

9        48.    This reality underscored by the fact that forty-four percent of advertising mail is

10  discarded unopened (U.S. Postal Serv., *Household Diary Study: Fiscal Year 2023*, at 49 (2024),

11  https://prc.arkcase.com/portal/filings/129457 (last visited Apr. 19, 2025)).

12       49.    The Ninth Circuit, in *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th

13  Cir. 2010), sets the standard for such deceptive tactics, explaining: "Whether conduct violates §§

14  1692e or 1692f requires an objective analysis that takes into account whether 'the least

15  sophisticated debtor would likely be misled by a communication.' See *Guerrero v. RJM*

16  *Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007)." Defendants' vague notices and premature

17  lawsuit would likely mislead the "least sophisticated consumer," such as Plaintiff, thus violating

18  this clear benchmark.

19       50.    Defendants' documentable lack of any other pre-suit efforts or attempts at

20  resolution clearly reveals their aim: to drag consumers into an unfamiliar legal venue for

21  advantage, not to resolve, while sidestepping legal safeguards with calculated precision. This

22  was never about resolution; it appears their strategy was either to fish for default judgments or to

23  use the resulting flawed lawsuit as leverage for a settlement. Despite their demonstrable and

24

Complaint – Case No:

1   fundamental failure to adhere to legal consumer safeguards, Defendants audaciously attempt to

2   assert that these minimal actions satisfy legal consumer protections.

3        51.    This scheme directly fueled Plaintiff's severe distress, which was further

4   amplified by the fact that it struck just days before Christmas. The constant worry and need to

5   defend against this matter further burdened Plaintiff's mental health, aggravating long-diagnosed

6   depression and anxiety, triggering insomnia, panic attacks, and obsessive-compulsive disorder,

7   deeply disrupting family life and finances through wage loss from extended disability.

8   **Sonoma Suit**

9        52.    Defendants allegedly acquired a $4,000 personal loan debt that originated

10  between LendingClub and Plaintiff. Subsequently, on December 13, 2024, Defendants filed a

11  collection lawsuit against Plaintiff in the Superior Court of California, County of Sonoma, Case

12  No. 24CV07542 ("Sonoma Suit") (Ex. F, Complaint, pp. 1–3).

13       53.    Plaintiff's first interaction with Defendants was the service of the Sonoma Suit at

14  Plaintiff's residence on December 17, 2024. As Defendants failed to provide the validation

15  notice mandated by 15 U.S.C. § 1692g(a) prior to initiating this lawsuit, their premature action

16  constitutes a violation of Cal. Civ. Code § 1788.15(a).

17       54.    In addition to being premature and filed without lawful notice, the Sonoma Suit is

18  fundamentally flawed. The complaint seeks $4,306.54 based on a bare Promissory Note (Ex. F,

19  Promissory Note, pp. 7–10) and an incomplete chain of title (Ex. F, Chain of Title, p. 17),

20  lacking assignment dates and adequate proof of AIM's ownership.

21       55.    These flaws are further evidenced by a $55.50 discrepancy from the $4,362.04

22  debt amount stated on their alleged "validation notice" (Ex. B, Notice, p. 1).

23       56.    Most notably, the Promissory Note references a Borrower Agreement and

24  Arbitration Agreement, yet neither of which were provided, suggesting either negligent handling

Complaint – Case No:

1  of critical documentation or a deliberate omission intended to obscure Plaintiff's rights, such as

2  dispute and arbitration options. This lack of referenced essential information, negligent at best,

3  significantly hindered any potential for non-judicial resolution, prejudicing Plaintiff of rights.

4      57.    The premature filing of this insufficient and baseless Sonoma Suit by Kayvon, via

5  Scott for AIM, suggests reckless disregard for legal requirements. The actions of Scott and AIM

6  warrant Department of Financial Protection and Innovation ("DFPI") scrutiny under Cal. Fin.

7  Code § 90012(a) for licensing violations, while Kayvon's conduct warrants review by the State

8  Bar of California for violating Cal. Rules of Prof. Conduct Rules such as 1.1 (incompetence), 3.1

9  (meritless claims), and 4.1 (untruthfulness).

10     58.    Plaintiff's attempts to resolve the Sonoma Suit's defects, including explicitly

11 pointing out its flaws and on multiple occasions urging Defendants to dismiss in favor of a

12 private settlement, were ignored. This demonstrated Plaintiff's good faith in seeking a non-

13 judicial resolution, which was met with Defendants' apparent disregard for fairness and due

14 process, and their insistence that the flawed lawsuit was justified.

15     59.    The service of the Sonoma Suit on December 17, 2024, mere days before

16 Christmas, blindsided Plaintiff amidst family, including Plaintiff's 4-year-old son, turning

17 holiday joy into dread. This unwelcome and unwarranted service of the suit at a sensitive time,

18 mere days before Christmas, fueled profound distress. See *McCullough v. Johnson, Rodenburg*

19 *& Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011) (court upheld award for emotional distress

20 caused by a debt collector's FDCPA violations).

21 **February Notice**

22     60.    Post-lawsuit, on January 13, 2025, Kayvon emailed Plaintiff the "validation

23 notice (Exhibit B, Notice, p. 1)," claiming it had been mailed on February 9, 2024. This was

24 Plaintiff's first time seeing the notice, as no communication was received from Defendants prior

Complaint – Case No:

16

1    to the Sonoma Suit. The failure to effectively communicate this notice violates 15 U.S.C. §

2    1692g(a).

3          61.    Prompted, Plaintiff searched mail logs and found a senderless envelope, logged

4    by USPS on February 16, 2024. The envelope, showing only a barcode and an unknown P.O.

5    Box in Texas (Ex. C, Envelope, p. 1), misleads the "least sophisticated consumer" into easily

6    missing its significance, violating FDCPA's clarity mandate.

7          62.    The "least sophisticated consumer" cannot be expected to open every piece of

8    unsolicited mail to discern if it contains a legally important debt collection notice or not. This

9    singular effort in an anonymous envelope, lacking sender identification, would likely be

10   perceived as junk and discarded unopened (*supra* ¶ 48), resulting in non-delivery and a failure of

11   notice.

12         63.    "Communication must not be designed to 'evade the spirit of the notice statute,

13   and mislead the debtor into disregarding the notice.'" *Swanson v. Southern Oregon Credit*

14   *Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (citing *Ost v. Collection Bureau, Inc.*, 493 F.

15   Supp. 701, 703 (D.N.D. 1980)). This foreseeably deceives the "least sophisticated consumer,"

16   who reasonably discards unmarked mail, nullifying notice rights.

17         64.    Further, the notice's statement, "At this point in time, no attorney with this firm

18   has personally reviewed the particular circumstances of your account," is misleading to the "least

19   sophisticated consumer", in violation of 15 U.S.C. § 1692e. This statement could reasonably be

20   interpreted as implying that an attorney *will* review the account in the future, suggesting an

21   impending escalation of collection efforts, including potential legal action. Such an implication

22   can improperly pressure consumers, overshadowing the purpose of the message. "The validation

23   notice may not be either 'overshadowed' or contradicted by other language or material in the

24

Complaint – Case No:

17

1   original or subsequent collection letters sent within 30 days after receipt of the first one."

2   *Swanson*, 869 F.2d 1222 at 1225.

3        65.     The very placement of this disclaimer, as well as the anonymity of the envelope,

4   suggests not a singular "bona fide error," but rather a systemic flaw, potentially affecting

5   numerous consumers, an inference likely supported as Defendants' mail room records come out

6   in discovery.

7        66.     The purpose of 15 U.S.C. § 1692g(a) is to ensure consumers are informed of their

8   rights. By utilizing a senderless envelope, the Defendants created an unnecessary barrier to this

9   information, effectively nullifying the intent of the statute. Clearly, Defendants' single effort

10   falls far short of the reasonable effort required to provide clear and effective notice.

11   **April Notice**

12        67.     On April 29, 2024, Scott mailed a deceptive "intent to sue" notice (Exhibit D,

13   Intent Letter) in a discreet envelope (Exhibit E, Envelope, p. 2), logged by USPS on May 7,

14   2024. Plaintiff only learned of this "intent to sue" notice long after the lawsuit was filed, via an

15   email from Kayvon on March 13, 2025. Plaintiff did not receive this envelope, from a then

16   unintroduced sender. If it did arrive, it was certainly discarded unopened as junk (*supra* ¶ 48),

17   just like the "least sophisticated consumer" would do .

18        68.     With the anonymous "validation notice" discarded as intended, this hasty,

19   threatening letter surged forward, ominously warning of "preparing a lawsuit" and a "judgment"

20   (Ex. D, Intent Letter) without clear grounds—violating 15 U.S.C. § 1692e(5), which bars false

21   threats—to bully, not inform, stripping Plaintiff's rights with calculated evasion.

22        69.     Further, even if received, its vague threats of "costs and necessary disbursements"

23   misled and intimidated, violating 15 U.S.C. § 1692e(10), barring deceptive collection tactics.

24   This deficient notice, designed to confuse and intimidate, fits Defendants' pattern of scant, non-

  Complaint – Case No:

1  compliant attempts at notice, aiming to file lawsuits when consumers miss them. Plaintiff's

2  USPS logs, consisting of thousands of pages, confirm no other efforts from any Defendants

3  beyond these.

4  **Settlement Offers**

5      70.    Kayvon sent coercive emails on March 4 and 13, 2025 (Exhibit G, Kayvon

6  Emails, pp. 1–2), using the improperly filed Sonoma Suit to pressure Plaintiff. The March 4

7  email offered vague settlement terms, seeking a lump sum or monthly payments to "be all done

8  at once" while obscuring the lawsuit's deficiencies (Ex. G, Kayvon Email, p. 1). The subsequent

9  email on March 13 falsely asserted that prior valid notices justified the suit, offered a 50%

10  discount, and threatened that arbitration would incur "post-charge off interest" and "costs/fees"

11  (Ex, G, Kayvon Email, p. 2). These misrepresentations constitute violations of 15 U.S.C. §

12  1692e(2)(A) and Cal. Civ. Code § 1788.13(e). Kayvon, acting as a debt collector under the

13  definition established in *Heintz*, 514 U.S. 291 at 294–95, violated 15 U.S.C. § 1692f by

14  leveraging the invalid Sonoma Suit and violated 15 U.S.C. § 1692e through his false claims.

15      71.    Despite Plaintiff informing Kayvon of the Sonoma Suit's defects starting January

16  13, 2025, requesting dismissal and offering private settlement, Kayvon refused, demonstrating

17  bad-faith coercion in response to Plaintiff's good-faith efforts. Plaintiff's repeated attempts from

18  January 13, 2025, onward to resolve the matter by highlighting the lack of proper notice and

19  invalid title were met with escalating threats (Ex. G). This bad-faith response and these threats,

20  which exacerbated Plaintiff's distress and employed calculated intimidation during a period of

21  significant strain, violated 15 U.S.C. § 1692f.

22  **Pattern**

23      72.    Defendants' predatory scheme exhibits a multistate pattern primarily in CA, TX,

24  SC, AL, VA, PA, and TN. This is evidenced by at least 75 CFPB complaints since 2020, 39 of

Complaint – Case No:

1  which parallel Plaintiff's exclusively with no-notice claims and premature lawsuits (e.g., Exhibit

2  H, CFPB Sample, p. 1, "Scott & Associates has filed unsubstantiated lawsuit… I have never

3  received any debt validation"; Exhibit H, CFPB Sample, p. 2, "Judgment from Scott &

4  Associates… did not send or notify me of any alleged debt").

5     73.    This pattern is mirrored by 13 lawsuits in addition to Plaintiff's filed by AIM in

6  Sonoma County in 2024 alone, apparently and similarly lacking clear assignment documentation

7  and notice (Sonoma Cnty. Super. Ct. Pub. Portal, https://cmsportal.sonomacourt.org/iportal

8  (searched Apr. 19, 2025)).

9     74.    Widespread online outcry, readily found on consumer forums and review

10  platforms, suggests a potentially significant pattern of inadequate notices and hasty litigation by

11  Defendants, reportedly targeting vulnerable consumers. While these online reports are not formal

12  legal findings, their consistency across various platforms indicates a broader public concern

13  mirroring the allegations herein.

14     75.    Plaintiff's comprehensive USPS logs, spanning thousands of pages, confirm only

15  two mailings from Defendants—a senderless envelope and an unknown envelope—with no

16  record of any further efforts. These logs prove Defendants' sole attempt was the anonymous

17  envelope (Ex. C, Envelope, p.1), which they should have known was ineffective, given its junk-

18  like design (U.S. Postal Serv., *Household Diary Study: Fiscal Year 2023*, at 49 (2024),

19  https://prc.arkcase.com/portal/filings/129457 (last visited Apr. 19, 2025)). Defendants

20  intentionally sought to evade the notice requirement of 15 U.S.C. § 1692g(a) to rush litigation.

21  Discovery is likely to further substantiate this systemic misconduct. "Certifying a reasonably

22  ascertainable FDCPA class for purely statutory damages will serve the purposes of the Act,

23  which is targeted at debt collector activities." *Gold v. Midland Credit Management, Inc.*, 82 F.

24  Supp. 3d 1064, 1071 (N.D. Cal. 2015).

Complaint – Case No:

20

**Harm**

76.     Defendants' predatory scheme, marked by the service of the Sonoma Suit days before Christmas, inflicted profound emotional devastation on Plaintiff, shattering family harmony and intentionally disrupting a time of joy. This egregious conduct exacerbated Plaintiff's pre-existing anxiety and depression, triggering relentless insomnia, debilitating panic attacks requiring increased medication, obsessive-compulsive disorder, and a spike in symptoms necessitating an extension of Plaintiff's EDD SDI disability from January 23, 2025, resulting in months of lost wages. See *McCullough*, 637 F.3d 939 at 957 (upholding award for emotional distress caused by FDCPA violations). Accord *Dawson v. Washington Mutual Bank, F.A.*, 390 F.3d 1139, 1149-50 (9th Cir. 2004) (discussing proof of emotional distress in the Ninth Circuit).

77.     As the primary caregiver to Plaintiff's 4-year-old son and household, Plaintiff was deprived of precious holiday moments, unable to maintain family routines or share joy, consumed instead by defending against this unjust matter. The resulting shame and dread, intensified by missed traditions and heated financial disputes with Plaintiff's fiancée, strained their relationship, representing an emotional blow.

78.     Kayvon's refusal to dismiss the flawed Sonoma Suit, despite being informed of its defects, coupled with the intimidating settlement offers in March 2025 (Ex. G), compounded Plaintiff's distress. This calculated targeting, particularly while aware of the suit's deficiencies, constitutes conduct that goes beyond the bounds of typical debt collection efforts and amounts to intentional infliction of emotional distress. Such actions, taken with a reckless disregard for the probability of causing severe emotional distress, were extreme and outrageous.

79.     This extensive harm is actionable under 15 U.S.C. § 1692k and Cal. Civ. Code § 1788.30. As the Ninth Circuit opinion explicitly notes in the matter of *McCullough*, 637 F.3d at

Complaint – Case No:

957, "the trial judge issued the following jury instructions with respect to damages available

under the FDCPA:"

> Actual damages include damages for personal humiliation, embarrassment,
> mental anguish and emotional distress. There is no fixed standard or measure in
> the case of intangible items such as humiliation, embarrassment, mental anguish
> or emotional distress. Mental and emotional suffering and distress pass under
> various names such as mental anguish, nervous shock and the like. It includes all
> highly unpleasant mental reactions such as fright or grief, shame, humiliation,
> embarrassment, anger, chagrin, disappointment, worry and nausea. The law does
> not set a definite standard by which to calculate compensation for mental and
> emotional suffering and distress. Neither is there any requirement that any witness
> express an opinion about the amount of compensation that is appropriate for the
> kind of law.

"[Defendants] did not object" (*id.* at 957). The Ninth Circuit affirmed.

80.    Regardless of intent, Defendants' actions violated the FDCPA and RFDCPA, and

harm was caused.

81.    "The FDCPA is a strict liability statute in that a plaintiff need not prove an error

was intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008). Accord

*Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057 (N.D. Cal. 2000). ("The FDCPA is a strict liability

statute and thus does not require a showing of intentional conduct on the part of the debt

collector.").

## CAUSES OF ACTION

**February Notice Violations:**

82.    Defendants' deceptive February 9, 2024 notice equitably tolled the FDCPA statute

of limitations (15 U.S.C. § 1692k(d)) until January 13, 2025, when Plaintiff discovered the

violation via Kayvon's email.

83.    The Supreme Court has established that, in cases of fraud or concealed actions,

the statute of limitations is tolled until the fraud is discovered. As the Court stated in *Bailey v.

Glover*, 88 U.S. 342, 343 (1874), "the general principle applies here that where the action is

Complaint – Case No:

22

1   intended to obtain redress against a fraud concealed by the party, or which from its nature

2   remains secret, the bar does not commence to run until the fraud is discovered." Additionally,

3   "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or

4   want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is

5   discovered.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010) (quoting *Holmberg v.*

6   *Armbrecht*, 327 U.S. 392, 397 (1946)).

7        84.    The Ninth Circuit addressed the applicability of the discovery rule to FDCPA

8   claims in *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009), finding

9   that "[t]he district court erred by holding that the discovery rule could not apply as a matter of

10  law to Mangum's FDCPA claim."

11       85.    Defendants' sole attempt to provide notice was a senderless envelope deliberately

12  designed to resemble junk mail, which Plaintiff never effectively received. As a result, Plaintiff

13  remained unaware of Plaintiff's rights until Kayvon disclosed the envelope's existence and

14  alleged contents on January 13, 2025.

15                          **FIRST CAUSE OF ACTION**
                              Failure to Provide Clear Notice
16                          (Violation of 15 U.S.C. § 1692g(a).)

17       86.    Plaintiff realleges and incorporates by reference each of the allegations contained

18  in the preceding paragraphs as though fully set forth herein.

19       87.    Defendants violated 15 U.S.C. § 1692g(a), which mandates written notice of debt

20  details and dispute rights, by sending a single senderless envelope in February 2024, without

21  follow-up, designed to resemble junk mail. By design, the envelope "'[evaded] the spirit of the

22  notice statute, and mislead the debtor into disregarding the notice.'" *Swanson v. Southern Oregon*

23  *Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (citing *Ost v. Collection Bureau, Inc.*,

24  493 F. Supp. 701, 703 (D.N.D. 1980)). This intentional failure and apparent systemic design, not

Complaint – Case No:

1  a bona fide error, misled the "least sophisticated consumer" into discarding it, obscuring

2  Plaintiff's dispute rights and causing confusion and distress, further aggravated by the lack of

3  any follow-up.

4  **Mere Mailing Does Not Always Afford Consumers Their Mandated Rights**

5        88.     Though rooted in judicial proceedings, the due process standard for effective

6  notice offers a benchmark to guide debt collection, ensuring consumers are aware of their

7  statutory protections, as mandated by the FDCPA. See *Mullane v. Central Hanover Bank &*

8  *Trust Co.*, 339 U.S. 306, 314 (1950) (The notice must be "reasonably calculated, under all the

9  circumstances, to apprise interested parties of the pendency of the action and afford them an

10  opportunity to present their objections.").

11        89.     This standard demands a method realistically likely to provide actual notice. In

12  the context of mail notification, the Supreme Court clarified that reliance on a single mailing,

13  even via certified mail, is insufficient if it is known or possible the mailing failed to reach the

14  recipient. See *Jones v. Flowers*, 547 U.S. 220, 225 (2006) (Involving property tax sale where

15  notice by certified mail was unclaimed, the Court held that "due process requires the government

16  to take additional reasonable steps to attempt to provide notice" when a mailed notice is

17  unclaimed). The Court reasoned that a party cannot "bury its head in the sand" when aware its

18  initial attempt at notice failed (*id.* at 234), as Defendants are doing here.

19        90.     While debt collection is not a government action subject to strict due process, the

20  FDCPA does demand a comparable standard of fairness and clarity in notice to ensure

21  consumers can exercise their rights. Defendants cannot evade this obligation by claiming a lesser

22  standard applies, as the statute mandates effective communication, not mere token efforts.

23        91.     Here, Defendants' notice—a single mailing sent by regular mail in an anonymous

24  envelope lacking sender identification, and without follow-up—foreseeably evaded the "least

Complaint – Case No:

24

sophisticated consumer," leaving Plaintiff unaware of mandated statutory protections. See

*Guerrero*, 499 F.3d 926 at 934 ("If the least sophisticated debtor would likely be misled by a

communication from a debt collector, the debt collector has violated the [FDCPA].").

92.    The envelope's design, a bare barcode and an unfamiliar P.O. Box in Texas,

foreseeably misleads the "least sophisticated consumer" into easily overlooking its importance,

violating FDCPA's clarity mandate. "Communication must not be designed to 'evade the spirit of

the notice statute, and mislead the debtor into disregarding the notice.'" *Swanson*, 869 F.2d at

1225 (9th Cir. 1989) (citing *Ost*, 493 F. Supp. at 703 (D.N.D. 1980)).

93.    The "FDCPA protects all consumers, the gullible as well as the shrewd… the

ignorant, the unthinking and the credulous." *Clark v. Capital Credit & Collection Serus., Inc.*,

460 F.3d 1162, 1171 (9th Cir. 2006) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d

Cir. 1993)). When their single notice failed, Defendants took no additional steps, unlike due

process demands. Rather, they "buried their heads in the sand" and rushed litigation. See *Jones v.*

*Flowers*, 547 U.S. 220, 225 (2006). Because of this, the mailing of the notice was neither

effective nor "reasonably calculated, under all the circumstances, to apprise" Plaintiff mandated

statutory rights as a consumer to Plaintiff, a failure akin to due process shortcomings. See

*Mullane*, 339 U.S. at 314 (1950).

94.    Plaintiff's USPS logs confirm only one attempt, this senderless envelope (Ex. C),

with no follow-up. Defendants knew, or should have known, this failed or could possibly fail to

reach Plaintiff, as forty-four percent of unsolicited mail is discarded unopened (*supra* ¶ 48).

**April Notice Violations:**

## SECOND CAUSE OF ACTION
Deceptive Intent-to-Sue Letter
(Violation of 15 U.S.C. § 1692e(10) and Cal. Civ. Code § 1788.10(f).)

Complaint – Case No:

1    95.    Plaintiff realleges and incorporates by reference each of the allegations contained

2    in the preceding paragraphs as though fully set forth herein.

3    96.    Defendants violated 15 U.S.C. § 1692e(10), which prohibits false representations

4    or deceptive means in debt collection, by sending an April 2024 letter vaguely threatening

5    litigation without specification, especially not having confirmed to have effectively provided a

6    mandated validation notice. This intentional deception misled the least sophisticated consumer

7    into fearing imminent, baseless legal action, heightening Plaintiff's anxiety and distress.

8    97.    Defendants breached Cal. Civ. Code § 1788.10(f), prohibiting threats to take

9    actions not intended, by including baseless warnings of "costs and necessary disbursements" in

10   the April 2024 letter, lacking legal justification. This deliberate intimidation, not a bona fide

11   error, targeted the least sophisticated consumer, straining Plaintiff's family relationships and

12   deepening emotional distress.

13   **Sonoma Suit Violations:**

14   **THIRD CAUSE OF ACTION**
     Unfair Premature Lawsuit
15   (Violation of 15 U.S.C. § 1692f.)

16   98.    Plaintiff realleges and incorporates by reference each of the allegations contained

17   in the preceding paragraphs as though fully set forth herein.

18   99.    Defendants violated 15 U.S.C. § 1692f, which prohibits unfair or unconscionable

19   means to collect a debt, by filing and serving a premature lawsuit days before Christmas, amidst

20   Plaintiff's family and 4-year-old son, without providing federally required notice under 15

21   U.S.C. § 1692g(a). This intentional tactic, not a bona fide error, exploited the least sophisticated

22   consumer's emotional vulnerability during a holiday, unjustly disrupting Plaintiff's family peace

23   and causing severe distress.

24

Complaint – Case No:

1

## FOURTH CAUSE OF ACTION
Lawsuit Lacking Basis
2           (Violation of Cal. Civ. Code § 1788.15(a).)

3       100.    Plaintiff realleges and incorporates by reference each of the allegations contained

4   in the preceding paragraphs as though fully set forth herein.

5       101.    Defendants violated Cal. Civ. Code § 1788.15(a), which prohibits debt collection

6   through judicial proceedings without valid notice, by knowingly and intentionally filing a

7   premature lawsuit without providing federally required notice under 15 U.S.C. § 1692g(a) or

8   proving debt ownership. This strictly liable violation deceived the least sophisticated consumer,

9   blindsiding Plaintiff with unwarranted litigation and causing significant distress.

10   **Settlement Offers Violations:**

11

## FIFTH CAUSE OF ACTION
False Pressure Post-Suit
12           (Violation of 15 U.S.C. § 1692e(5).)

13       102.    Plaintiff realleges and incorporates by reference each of the allegations contained

14   in the preceding paragraphs as though fully set forth herein.

15       103.    Defendants violated 15 U.S.C. § 1692e(5), which prohibits threats to take actions

16   that cannot legally be taken, by sending settlement emails in March 2025 threatening arbitration

17   fees after filing a premature lawsuit invalid due to defective federal notice requirements. These

18   intentional threats, not a bona fide error, deceived the least sophisticated consumer into fearing

19   unlawful costs, coercing Plaintiff and intensifying distress.

20

## SIXTH CAUSE OF ACTION
Misrepresenting Settlement Offers
21          (Violation of Cal. Civ. Code § 1788.13(e).)

22       104.    Plaintiff realleges and incorporates by reference each of the allegations contained

23   in the preceding paragraphs as though fully set forth herein.

24

Complaint – Case No:

1    105.    Defendants violated Cal. Civ. Code § 1788.13(e), prohibiting false representations

2   in debt collection, through settlement offers in March 2025 falsely claiming prior notices

3   justified their premature lawsuit and claiming additional fees would be incurred, despite no valid

4   notice under federal law. This intentional misrepresentation deceived the least sophisticated

5   consumer about the lawsuit's validity, sowing confusion and distress in Plaintiff.

6   **Outrageous Conduct:**

7                       **SEVENTH CAUSE OF ACTION**
                          Pattern of Harassment
8                       (Violation of 15 U.S.C. § 1692d.)

9    106.    Plaintiff realleges and incorporates by reference each of the allegations contained

10   in the preceding paragraphs as though fully set forth herein.

11   107.    Defendants violated 15 U.S.C. § 1692d, which prohibits conduct intended to

12   harass, oppress, or abuse, by orchestrating a calculated scheme of deceptive notices and

13   premature lawsuit service days before Christmas, amidst Plaintiff's family and 4-year-old son.

14   By deploying cryptic, anonymous communications and rushing to litigation without federally

15   required notice, Defendants' intentional conduct, not a bona fide error, targeted the least

16   sophisticated consumer with exploitative timing, severely disrupting Plaintiff's holiday peace

17   and intensifying distress, anxiety, and family strain.

18                       **EIGHTH CAUSE OF ACTION**
                          Willful Scheme to Annoy
19                       (Violation of Cal. Civ. Code § 1788.17)

20   108.    Plaintiff realleges and incorporates by reference each of the allegations contained

21   in the preceding paragraphs as though fully set forth herein.

22   109.    Defendants violated Cal. Civ. Code § 1788.17, mandating FDCPA compliance,

23   with a calculated scheme of deceptive notices and a premature lawsuit, served days before

24   Christmas, amidst Plaintiff's family and 4-year-old son. By evading federally required notice and

Complaint – Case No:

28

1   using misleading tactics, Defendants' intentional conduct, not a bona fide error, targeted the least

2   sophisticated consumer with exploitative timing, intensifying Plaintiff's distress, anxiety, and

3   family strain.

### NINTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(Violation of California Common Law.)

6   110.   Plaintiff realleges and incorporates by reference each of the allegations contained

7   in the preceding paragraphs as though fully set forth herein.

8   111.   Defendants intentionally inflicted severe emotional distress through a predatory

9   scheme targeting Plaintiff, the least sophisticated consumer. Defendants sent deceptive,

10  anonymous notices, issued coercive settlement offers with baseless threats, and served a

11  premature lawsuit on December 17, 2024, days before Christmas, with Plaintiff's family and 4-

12  year-old son present. Defendants' exploitative timing and refusal to dismiss the flawed Sonoma

13  Suit despite Plaintiff's good-faith efforts constitute extreme and outrageous conduct beyond

14  civilized bounds.

15  112.   This scheme caused Plaintiff severe distress, including aggravated anxiety,

16  depression, panic attacks, and profound shame and humiliation before family, as the public

17  lawsuit exposed financial struggles, fracturing holiday joy and straining relationships.

18  Defendants' bad-faith refusal to dismiss the defective Sonoma Suit, despite Plaintiff's repeated

19  notifications of its invalidity starting January 13, 2025, demonstrates intentional targeting of

20  Plaintiff's emotional vulnerability.

21  113.   Defendants' oppressive conduct triggered highly unpleasant mental reactions as

22  recognized under California law. See *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d

23  376, 397, 89 Cal. Rptr. 78, 90 (1970). ("The requisite emotional distress may consist of any

24  highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment,

Complaint – Case No:

anger, chagrin, disappointment or worry."). Accord *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590,

1612, 146 Cal. Rptr. 3d 585, 601 (2012) ("The requisite severe emotional distress can be based

on anger, embarrassment, humiliation, disappointment, worry, and nausea.")

### TENTH CAUSE OF ACTION
Punitive Damages for Malice
(Violation of Cal. Civ. Code § 3294.)

114.    Plaintiff realleges and incorporates by reference each of the allegations contained
in the preceding paragraphs as though fully set forth herein.

115.    Defendants' malicious scheme—deceptive anonymous notices, misleading intent-
to-sue letters, a baseless lawsuit served December 17, 2024, days before Christmas with
Plaintiff's family and 4-year-old son present, and coercive settlement offers laced with false
threats—warrants punitive damages under Cal. Civ. Code § 3294 for oppression, fraud, and
malice.

116.    This willful campaign ruthlessly deceived Plaintiff, the least sophisticated
consumer, exploiting the holiday's emotional weight to inflict severe distress, shame, and family
strain. Defendants' calculated tactics, part of a broader pattern of consumer complaints, show
reckless disregard for harm, meriting punishment and deterrence.

117.    Defendants' systemic use of anonymous notices and premature lawsuits, as
evidenced by 39 CFPB complaints mirroring Plaintiff's experience, plus at least 36 others
involving harassing phone calls and similar misconduct, reflects intentional disregard for
consumer rights, targeting vulnerable individuals like Plaintiff. "Punitive damages may properly
be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring
its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996). Accord *Pacific
Mut. Life Ins. Co. v. Haslip*, 499 U. S. 1, 19 (1991) ("[P]unitive damages are imposed for
purposes of retribution and deterrence").

Complaint – Case No:

1
    **PRAYER FOR RELIEF**

2
WHEREFORE Plaintiff CHRISTOPHER LAZZARO respectfully prays for judgment against

3
Defendants ACCELERATED INVENTORY MANAGEMENT, LLC, SCOTT &

4
ASSOCIATES, P.C., and ROBERT KAYVON II, jointly and severally, for the following relief:

5
    (a)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) for FDCPA violations

6
under the First, Second, Third, Fifth, and Seventh Causes of Action.

7
    (b)    Statutory damages pursuant to Cal. Civ. Code § 1788.30(b) for RFDCPA

8
violations under the Second, Fourth, Sixth, and Eighth Causes of Action.

9
    (c)    Compensatory damages pursuant to 15 U.S.C. § 1692k(a)(1) and Cal. Civ. Code §

10
1788.30(a) for actual harm, including severe emotional distress, aggravation of diagnosed

11
anxiety and depression, insomnia, panic attacks, and extended disability resulting in reduced

12
wages.

13
    (d)    Compensatory damages under California common law for intentional infliction of

14
emotional distress (Ninth Cause of Action), for Defendants' extreme and outrageous conduct,

15
including filing a premature public lawsuit without lawful notice days before Christmas,

16
worsening Plaintiff's anxiety and depression, causing panic attacks and insomnia, and inflicting

17
public shame and humiliation among family members.

18
    (e)    Punitive damages pursuant to Cal. Civ. Code § 3294(a) (Tenth Cause of Action)

19
for Defendants' willful, oppressive, and fraudulent scheme.

20
    (f)    A permanent injunction pursuant to Cal. Civ. Code § 1788.30(e), enjoining

21
Defendants from: (i) pursuing further collection efforts against Plaintiff absent compliance with

22
15 U.S.C. § 1692g(a); (ii) enforcing the Superior Court of California, County of Sonoma action,

23
(Case No. 24CV07542) ("Sonoma Suit"); and (iii) filing lawsuits without prior notice as required

24
by 15 U.S.C. § 1692g(a).

Complaint – Case No:

1      (g)     Declaratory relief pursuant to 28 U.S.C. § 2201(a) that: (i) the Superior Court of

2  California, County of Sonoma action (Case No. 24CV07542) ("Sonoma Suit"), is void *ab initio*

3  for noncompliance with 15 U.S.C. § 1692g(a) and Cal. Civ. Code § 1788.15(a), precluding

4  Defendants from using it to delay or prejudice this matter; and (ii) Defendants' notices and

5  settlement offers violate 15 U.S.C. §§ 1692e–1692g and Cal. Civ. Code §§ 1788.11–1788.17.

6      (h)     Costs of this action, including filing fees and service expenses, and reasonable

7  attorneys' fees if counsel is retained, pursuant to 15 U.S.C. § 1692k(a)(3), Cal. Civ. Code §

8  1788.30(c), and N.D. Cal. Civ. L.R. 54-1.

9      (i)     Prejudgment interest on state law claims from December 17, 2024, at 10% per

10  Cal. Civ. Code § 3289(b), discretionary prejudgment interest on FDCPA claims, and

11  postjudgment interest at federal rate under 28 U.S.C. § 1961(a) until satisfied.

12      (j)     Statutory damages for a certified class under 15 U.S.C. § 1692k(a)(2)(B) and Cal.

13  Civ. Code § 1788.30(b) for Defendants' violations of the FDCPA and RFDCPA.

14      (k)     Such further relief as this Court deems just and equitable.

15                        **CLASS ACTION RESERVATION**

16      118.    Plaintiff reserves the right to amend for a class action on behalf of U.S. consumers

17  subjected to Defendants' FDCPA and RFDCPA violations since 2020, including but not limited

18  to deficient debt validation notices under 15 U.S.C. § 1692g(a), premature lawsuits under Cal.

19  Civ. Code § 1788.15(a), and harassing collection tactics under 15 U.S.C. § 1692d, primarily in

20  CA, TX, SC, AL, VA, PA, and TN. This multistate misconduct supports class certification with

21  damages under 15 U.S.C. § 1692k(a)(2)(B).

22                        **DEMAND FOR JURY TRIAL**

23      119.    Plaintiff demands a trial by jury as to all issues.

24

Complaint – Case No:

1

2

3

4

5

6

7

8  **EXHIBITS**
   **Exhibit A:** LendingClub Borrower Agreement
9  **Exhibit B:** February 9, 2024 Validation Notice
   **Exhibit C:** February 16, 2024 USPS Informed Delivery Log
10 **Exhibit D:** April 29, 2024 Intent-to-Sue Letter
   **Exhibit E:** May 7, 2024 USPS Informed Delivery Log
11 **Exhibit F:** Sonoma Suit Complaint (Case No. 24CV07542)
   **Exhibit G:** Settlement Offers from Kayvon
12 **Exhibit H:** CFPB Complaint Samples (2020–Current)

13

14

15

16                              Christopher Lazzaro

17
   I declare under penalty of perjury under the laws of the United States that the foregoing is true and
18
   correct.
19
                                                    Executed On: April 23, 2025
20
   CHRISTOPHER LAZZARO
21 1302 Vallejo Street
   Santa Rosa, CA 95404
22 Telephone: (831) 241-2738
   Email: chrisflazzaro@gmail.com
23 Plaintiff, Pro Se

24

   Complaint – Case No:
                                    33