TIMOTHY P. JOHNSON (BAR NO. 66333)
BARRON & NEWBURGER, P.C.
1970 OLD TUSTIN AVENUE, SECOND FLOOR
SANTA ANA, CALIFORNIA  92705
TELEPHONE: (714) 832-1170
E-MAIL: tjohnson@bn-lawyers.com

Attorneys for Defendant Scott & Associates, PC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER LAZZARO, | Case No. 3:25-cv-03566-CRB |
| Plaintiff, | |
| vs. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT SCOTT & ASSOCIATES, PC'S MOTION TO DISMISS COMPLAINT** |
| ACCELERATED INVENTORY MANAGEMENT, LLC; SCOTT & ASSOCIATES, P.C., and ROBERT KAYVON II | Date:  July 11, 2025<br>Time:  10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge:  Hon. Charles R. Breyer |
| Defendants. | |

Pursuant to Rule 201 of the Federal Rules of Evidence, and additional rules and case law permitting consideration of the below-listed items, Defendant Scott & Associates, PC ("Scott") hereby requests that the Court take judicial notice of the following documents. The Court may judicially notice court filings and other matters of public record. Fed. R. Evid. Rule 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Based on the foregoing, Scott requests judicial notice of the following documents:

1. Court Docket for the Superior Court of California, County of Sonoma, Case No. 24CV07542. A true and correct copy of the Court Docket is attached hereto as Exhibit 1.

2. The Motion to Compel Arbitration filed by Christopher Lazzaro in the action filed in the Superior Court of California, County of Sonoma, Case No. 24CV07542. A true and correct copy of that motion is attached hereto as Exhibit 2.

Dated: May 15, 2025

**BARRON & NEWBURGER, P.C.**

By:＿＿＿＿＿/s/ Timothy Johnson＿＿＿＿＿＿
TIMOTHY P. JOHNSON
Attorneys for Defendant
Scott & Associates, PC

REQUEST FOR JUDICIAL NOTICE                    25-cv-03566-CRB

Exhibit
1

# Case Information

24CV07542 | Accelerated Inventory Management Llc vs Lazzaro

| Case Number | Court | Judicial Officer |
|---|---|---|
| 24CV07542 | Civil | English, Kenneth G. |
| File Date | Case Type | Case Status |
| 12/13/2024 | 09: Limited Rule 3.740 Collections - Assignee $5K or less | Active |

# Party

Plaintiff
Accelerated Inventory Management Llc

Active Attorneys ▾
Lead Attorney
Kayvon, Robert, II
Retained

Defendant
Lazzaro, Christopher

# Events and Hearings

12/13/2024 Complaint Filed ▾

Comment
DOES 1-5

| 12/13/2024 Summons Issued |
|---|

| 12/13/2024 Civil Case Cover Sheet |
|---|

12/13/2024 Declaration re: ▾

    Comment
    Fee

| 12/13/2024 Notice of Assignment to 1 Judge and Notice of CMC |
|---|

12/13/2024 Proof of Service - 30 Days Summons and Complaint ▾

Requested By
Accelerated Inventory Management Llc

Served
12/17/2024

| 12/17/2024 Proof of Service of Process |
|---|

| 02/13/2025 Motion to Compel Arbitration |
|---|

| 02/19/2025 Notice of Reassignment |
|---|

04/23/2025 Motion ▾

Original Type
Motion to Compel

Judicial Officer
English, Kenneth G.

Hearing Time
3:00 PM

Result
Held

Comment
Arbitration and Stay Litigation

04/25/2025 Clerk Letter Returning Document Unfiled ▾

    Comment
    Rejected Proposed Order Granting Defendant's Motion to Compel Arbitration and Stay Litigation due to
    1st paper feed due.

01/26/2026 Case Management Conference - Collections ▾

Hearing Time
1:30 PM

Exhibit
2

CHRISTOPHER LAZZARO
1302 Vallejo Street
Santa Rosa, CA 95404
Telephone: (831) 241-2738
Email: chrisflazzaro@gmail.com

CHRISTOPHER LAZZARO,
IN PRO PER

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA

### LIMITED JURSIDICTION

| | |
|---|---|
| ACCELERATED INVENTORY MANAGEMENT, LLC, | Case No.: 24CV07542 |
| Plaintiff, | **NOTICE AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| vs. | |
| CHRISTOPHER LAZZARO, IN PRO PER | Hearing Date: |
| Defendant. | Time: |
| | Place: |

NOTICE OF MOTION TO PLAINTIFF ACCELERATED INVENTORY

MANAGEMENT, LLC AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on a date and time to be determined and provided that this

matter may be heard in the Superior Court for the State of California, County of Sonoma, located

at 600 Administration Drive, Santa Rosa, California, or at another appropriate venue, Defendant

CHRISTOPHER LAZZARO ("Defendant") will, and hereby does, move this Honorable Court

for an Order 1) Compelling Plaintiff ACCELERATED INVENTORY MANAGEMENT, LLC to

submit all of its alleged claims in this action to binding private arbitration and 2) Staying

1

Litigation pending completion of the arbitration proceedings. This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. 1, et seq. and is brought on the grounds that Plaintiff's claims are subject to a valid and enforceable Arbitration Agreement that requires Plaintiff to arbitrate any claims related to the disputes at the election of either party. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of CHRISTOPHER LAZZARO, and Exhibits attached thereto filed concurrently herewith, and the papers and records in the Court's file, and such oral argument as may be presented during the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant hereby moves this Honorable Court to Compel Arbitration from the Plaintiff and Stay Litigation. A Motion to Compel Arbitration "Answers" a Complaint. The Tenth Circuit addressed this issue and gave a clear answer, with authority that others can use:

> "[a] defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint,". And, as [defendant] points out, requiring a party to file an answer denying material allegations in the complaint and asserting potential affirmative defenses—in short, formally and substantively engaging in the merits of the litigation—in order to enforce its right not to litigate is a non-sequitur. *Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 Fed.Appx. 604, 607-08 (10th Cir. 2011) (internal citations omitted).

Other Courts have implicitly noted that a Motion to Compel Arbitration, pursuant to Sections 3 or 4 of the FAA, may be filed instead of an Answer that responds to the substance of a Plaintiff's Complaint. (*E.g., Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at *2 (N.D. Ind. Feb. 11, 2014); *MQDC, Inc. v. Steadfast Ins. Co.*, 2013 WL 6388624, at *6 (E.D.N.Y. Dec. 6, 2013); *Whaley v. T-Mobile, Inc.*, 2013 WL 5155342, at *2 (E.D. Ky. Sept. 12, 2013).) Similarly, a Motion to Compel Arbitration in lieu of an Answer to the Complaint is authorized by California Code of Civil Procedure section 1281.7 if this matter is determined to be governed by California law. (Cal. Civ. Proc §1281.7.)

## I.    STATEMENT OF FACTS

Plaintiff ACCELERATED INVENTORY MANAGEMENT, LLC ("Plaintiff"), is a debt buyer that purchases consumer debts from other lenders including a loan initially issued to Defendant CHRISTOPHER LAZZARO by LendingClub Bank. Plaintiff is bound by a voluntary, mutual and enforceable agreement to arbitrate its claims entered into by Defendant and the original lender, LendingClub Bank.

3

1    Specifically, the Arbitration Agreement was agreed to by Defendant and LendingClub

2  Bank and is incorporated into the Loan Agreement and Promissory Note that is the basis of

3  Plaintiff's claims. The Loan Agreement and Promissory Note refers to additional

4  terms outlined in a Borrower Agreement, stating, "This note is subject to the Arbitration

5  Agreement in the Borrower Agreement between the Lender and the Borrower." (Decl. of

6  Christopher Lazzaro, Exhibit A, Page 3.). The Borrower Agreement was omitted from Plaintiff's

7  initial pleading.

8    Section 16 of the Borrower Agreement mandates arbitration, waiving court litigation,

9  stating:

10    "YOU AND WE ACKNOWLEDGE THAT WE AND YOU HAVE A RIGHT
      TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY, BUT
11    WILL NOT HAVE THAT RIGHT IF EITHER WE OR YOU ELECTS TO
      HAVE A DISPUTE DECIDED THROUGH ARBITRATION PURSUANT TO
12    THIS ARBITRATION AGREEMENT. YOU AND WE NEVERTHELESS
      HEREBY KNOWINGLY AND VOLUNTARILY WAIVE OUR RIGHTS TO
13    LITIGATE CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON
      ELECTION OF ARBITRATION BY EITHER YOU OR US."

14

15    Further the Borrower Agreement specifies, "Either you or we may, at either's sole

16  election, require that the sole and exclusive forum for resolution of a Claim be final and binding

17  arbitration pursuant to this Section 16 ("Arbitration Agreement"), unless you [CHRISTOPHER

18  LAZZARO] opt out as provided in Section 16(b) below." (Decl. of Christopher Lazzaro, Exhibit

19  B, Page 3.) At no point did Defendant opt out of the Arbitration Agreement. (Decl. of

20  Christopher Lazzaro, Page 2.) On or about January 13, 2024, Defendant notified Plaintiff of this

21  Arbitration Agreement and asserted his right to elect binding arbitration. As of February 6, 2024,

22  the Plaintiff has stopped communicating with Defendant. (Decl. of Christopher Lazzaro, Exhibit

23  C.) Plaintiff has refused to arbitrate the controversy.

24

4

1   The assignment of this debt to Plaintiff had no impact on the enforceability of the

2   Arbitration Agreement. The Borrower Agreement, Section 16(g) states that the Arbitration

3   Agreement shall survive "any transfer or assignment of any loan or Loan Agreements or any

4   other promissory note(s)...." (Decl. of Christopher Lazzaro, Exhibit B, Page 5.) Therefore, a

5   valid arbitration agreement exists, Defendant has elected arbitration, Plaintiff has refused by its

6   silence and arbitration should be compelled.

7   II.   THE COURT SHOULD ORDER PLAINTIFF TO ARBITRATE THEIR
          CLAIMS
8

9   Under California and Federal law, public policy favors arbitration as an efficient and less

10  expensive means of resolving private disputes. (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1,

11  8-9.) Accordingly, whether an agreement is governed by the California Arbitration Act or the

12  Federal Arbitration Act ("FAA"), courts resolve doubts about an Arbitration Agreement's scope

13  in favor of arbitration. (Moncharsh, at 9; Comedy Club, Inc. v. Improv West Assocs. (9th Cir.

14  2009) 553 F.3d 1277, 1284.) "[U]nder both the FAA and California law, 'Arbitration

15  Agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

16  equity for the revocation of any contract.'" (Higgins v. Sup. Ct. (2006) 140 Cal.App.4th 1238,

17  1247.)

18  The Court should order Plaintiff to arbitrate their claims pursuant to the FAA, 9 U.S.C.

19  §§3-4 because the claims alleged arise from the assignment of a loan promissory note with an

20  enforceable Arbitration Agreement and stay litigation.

21  A.   The Federal Arbitration Act Applies to The Parties' Arbitration Agreement.

22  The Agreement to Arbitrate signed by Plaintiff specifically provides that it is governed

23  by the FAA, stating:

24

5



The scope of this Arbitration Agreement is to be given the broadest possible interpretation that is enforceable. Your agreement to the Borrower Agreement is made pursuant to a transaction in interstate commerce, and thus the Federal Arbitration Act, 9 U.S.C.A § 1, et seq., governs the interpretation and enforcement of this Arbitration Agreement. (Decl. of Christopher Lazzaro, Exhibit B, Page 4.)

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 346 (2011), the FAA declares a liberal policy favoring the enforcement of Arbitration Agreements. The FAA provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of Arbitration Agreements. (*Hall St. Assoc., LLC v. Mattel, Inc.* (2008) 552 U.S. 576, 581; *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 443 (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").) It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (2008); 460 U.S. 1, 22 (1983).) To this end, the FAA not only places Arbitration Agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy *favoring* Arbitration Agreements." (*Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).)

Accordingly, a Court must interpret Arbitration Agreements liberally, resolving all doubt in favor of arbitration. (*See AT&T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) *quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may

6

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").)

As the Agreement signed by Plaintiff is governed by the FAA, the Court should apply the above-described principles granting a preference for arbitration under the FAA.

**B. The Arbitration Agreement is Valid and Must Be Enforced.**

The FAA requires Courts to compel arbitration "in accordance with the terms of the agreement" upon the Motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. (9 U.S.C. § 4.) In determining whether to compel arbitration under the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. (*PacifiCare Health Sys., Inc. v. Book* (2003) 538 U.S. 401, 407 n.2; *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83-84.)

**1. A Valid Agreement to Arbitrate Exists.**

The first gateway issue is whether the Arbitration Agreement was valid. General contract law principles apply to the interpretation and enforcement of Arbitration Agreements. (*First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).) Defendant's burden is minimal – he only needs to establish, by a preponderance of evidence, that a valid agreement to arbitrate exists. (*Rosenthal v. Great Western Fin. Securities Corp.*, (1996) 14 Cal. 4th 394, 413; *Condee v. Longwood Management Corp.*, (2001) 88 Cal. App. 4th 215, 218-19 (party seeking to compel arbitration needs only prove, by a preponderance of the evidence, that an agreement to arbitrate exists).) The moving party may prove an Arbitration Agreement exists by providing the court with a copy or recitation of the agreement's terms. (*Condee*, 88 Cal. App. 4th at 218-19; *see also* Cal. R. of Ct. 3.1330 (a copy of the agreement need only be attached to the petition to compel arbitration).)

7

1   A copy of the agreement has been provided to the Court. (Decl. of Christopher Lazzaro,

2   Exhibits A and B.)

3       A.  **Plaintiff is Deemed to Have Assented to The Terms of The Arbitration
        Agreement.**

4

5       A valid agreement to arbitrate exists because: 1) LendingClub Bank, the original lender

6   drafted the Agreement, acknowledged its intent, and had ample opportunity for review, before

7   being bound by the Agreement, and 2) Plaintiff admittedly is the sole owner/assignee of the

8   agreement entered into by Defendant and took the assignment for value. (Complaint, page 2.)

9   Plaintiff was transferred the contract's rights and obligations and takes on the assignor's rights

10  and remedies. Plaintiff is bound by the contract it purchased and all of its terms including the

11  Arbitration Agreement.

12      Defendant had thirty days from his electronic acceptance of the Borrower Agreement to

13  opt out of the Arbitration Agreement in writing, but did not do so. (Decl. of Christopher Lazzaro,

14  Page 2.)

15      The Agreement is also supported by valid consideration. Both the original lender (and its

16  successors) and the Defendant are obligated under the Agreement to submit claims to arbitration

17  upon election. Mutual promises to arbitrate suffice to establish the requisite consideration. (*See

18  Jones v. Humanscale Corp.*, 130 Cal. App. 4th 401, 416 (2005).) "Where an agreement to

19  arbitrate exists, the parties' mutual promises to forego judicial determination and to arbitrate

20  their disputes provide consideration for each other." (*Strotz v. Dean Witter Reynolds*, 223 Cal.

21  App. 3d 208, 216 (1990) *overruled on other grounds by Rosenthal v. Great Western Fin.

22  Securities Corp.*, 14 Cal. 4th 394, 882 (1996).)  A court may not concern itself with the adequacy

23  of consideration. (*Asmus v. Pacific Bell*, 23 Cal. 4th 1, 15 (2000); *Foley v. Interactive Data

24  Corp.*, 47 Cal. 3d 654, 679 (1988).)

8

### B. The Arbitration Agreement is Properly Incorporated by Reference into The Loan Agreement and Promissory Note

The doctrines of contract law must be applied to Arbitration Agreements just as they would to any other contract. (*Pinnacle Museum*, 55 Cal.4th at 235-236; *see also, e.g., Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (Section 2 of the FAA "precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be 'placed upon the same footing as other contracts.'").) It is a well-established principle of contract law that incorporation of a document within the terms of a contract is equivalent to complete inclusion of the document within the contract's four corners. (*King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349, 357 (1981) ("[A] secondary document becomes part of a contract as recited verbatim when it is incorporated into a contract by reference, provided that the terms of the incorporated document are readily available to the other party.").)

Courts have consistently enforced Arbitration Agreements that were much less specific than the Agreement in this case. (*See Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal.4th 83, 91, 97, 127 (2000) (court enforced Arbitration Agreement where employees had filled out and signed employment application forms, which included an arbitration clause).)

The incorporation in this case is even more clear. The Loan Agreement and Promissory Note clearly states, "This note is subject to the Arbitration Agreement in the Borrower Agreement between the Lender and the Borrower." (Decl. of Christopher Lazzaro, Exhibit A, Page 3.)

### C. Assignment Transferred the Rights and Obligation of the Arbitration Agreement.

The assignment of this debt has no impact on the enforceability of the Arbitration Agreement. The Borrower Agreement very clearly states in Section 16(g) that the Arbitration

9

1   Agreement shall survive "any transfer or assignment of any loan or Loan Agreements or any

2   other promissory note(s)...." (Decl. of Christopher Lazzaro, Exhibit B, Page 5.) The Agreement

3   is valid and should be enforced.

4       **2. Plaintiff's Claims Fall Within the Scope of the Agreement.**

5       The second gateway issue is whether the Arbitration Agreement covers the dispute

6   between the parties. In making this determination, the FAA requires courts to apply a

7   presumption in favor of arbitrability. (*See Moses H. Cone*, 460 U.S. at 24-25.) In fact, courts

8   must enforce Arbitration Agreements "unless it may be said with positive assurance that the

9   arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

10   should be resolved in favor of coverage." (*United Steelworkers of Am. v. Warrior & Gulf*

11   *Navigation Co.*, 363 U.S. 574, 582-83 (1960).)

12       The Arbitration Agreement in this instance clearly defines the types of claims that are

13   covered. The agreement states:

14       "Claim" shall include any past, present, or future claim, dispute, or controversy
       involving you (or persons claiming through or connected with you), on the one
15       hand, and us (or persons claiming through or connected with us), on the other
       hand, relating to or arising out of the Borrower Agreement, the Loan Agreement,
16       any Service (including but not limited to the Site and the LC Platform), any loan
       application, loan request, or loan, and/or the activities or relationships that
17       involve, lead to, or result from any of the foregoing. Claims are subject to
       arbitration regardless of whether they arise from contract, tort (intentional or
18       otherwise), a constitution, statute, common law, principles of equity, or any other
       legal theory. Claims include matters arising as initial claims, counter-claims,
19       cross-claims, third-party claims, or otherwise. (Decl. of Christopher Lazzaro,
       Exhibit B, Page 4.)
20

21   All of Plaintiff's claims arise from the Loan Agreement and loan and thus, clearly fall within the

22   scope of the Arbitration Agreement.

23       **D. ARBITATION SHOULD BE COMPELLED**

24       Under the FAA, a court must Compel Arbitration if a party shows that there is an

10

1 enforceable arbitration clause encompassing the dispute. (9 U.S.C. § 4.) The litigation must be at

2 least be stayed until the arbitration is completed. (9 U.S.C. § 3.)

3 <u>CONCLUSION</u>

4     Arbitration is favored by law. The Plaintiff's actions contradict this policy by seeking

5 judicial relief without first engaging in the agreed-upon arbitration process. Defendant,

6 Christopher Lazzaro, respectfully requests that this Honorable Court:

7     A. Compel Arbitration from the Plaintiff and Stay Litigation pending arbitration;

8     B. Award Defendant compensation for the filing fees of this motion, court fees, and any

9 and all other expenses incurred or that may be incurred in defending this action.

10     C. Any further relief the Court deems appropriate, including but not limited to any

11 compensatory or punitive damages for any potential breach of contract or violation of privacy.

12 Respectfully submitted.

13 DATED: February 12, 2025

14

15

16 CHRISTOPHER LAZZARO
In Pro Per

17

18

19

20

21

22

23

24

11

# Exhibit A

Received S&A 02/21/2025

Exhibit A

1  CHRISTOPHER LAZZARO
   1302 Vallejo Street
2  Santa Rosa, CA 95404
   Telephone: (831) 241-2738
3  Email: chrisflazzaro@gmail.com

4  CHRISTOPHER LAZZARO,
   IN PRO PER

5

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10                       LIMITED JURSIDICTION

11

12  ACCELERATED INVENTORY              Case No.: 24CV07542
    MANAGEMENT, LLC,
13
                Plaintiff,             DECLRATION OF CHRISTOPHER
14                                     LAZZARO IN SUPPORT OF NOTICE
         vs.                           AND MOTION TO COMPEL
                                       ARBITRATION AND STAY
15  CHRISTOPHER LAZZARO, IN PRO PER    LITIGATION

16              Defendant.

17

18       I, Christopher Lazzaro, hereby certify and declare:

19  1. I am the Defendant in the matter captioned above. I make this Declaration based on

20     personal information, am familiar with the following facts, and, if called upon to do, I

21     could and would competently testify as to the veracity.

22  2. I am a citizen of California, and I currently reside in Santa Rosa, California.

23  3. Attached as Exhibit A is a true and correct copy of the Loan Agreement and Promissory

    Note with LendingClub Bank.

4. Attached Exhibit B is a true and correct copy of the Borrower Agreement incorporated by reference to the Loan Agreement and Promissory Note with LendingClub Bank.

5. Attached as Exhibit C is a true and correct copy of the email correspondence with Plaintiff's counsel, Robert Kayvon, between January 13, 2025 and February 6, 2025.

6. I never opted out of the Arbitration Agreement included in the Borrower Agreement in writing, verbal or in any other manner.

7. The initial and only contact from the Plaintiff in regards to this litigation was the service of the complaint at my residence. The Plaintiff initiated litigation without attempting arbitration.

8. I informed Plaintiff's counsel that there was an arbitration agreement and that I was electing that process. Plaintiff has refused through its silence.

9. By bypassing arbitration and proceeding directly to court, the Plaintiff has invaded my privacy, as all details of this dispute are now exposed in public court records, contrary to the confidentiality that the agreed-upon arbitration would have provided.

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct and that this declaration was executed by me on February 11, 2025 at Santa Rosa, California.

CHRISTOPHER LAZZARO
In Pro Per

Exhibit A

Exhibit A



**Promissory Note for $4,000**

**Loan Agreement and Promissory Note**
Borrower Member ID: 247318830

Joint Applicant/Co-Borrower Member ID: N/A

$4,000

June 17, 2022

In this Loan Agreement and Promissory Note (the "Note"), the word "Borrower" refers to each borrower and joint applicant/co-borrower named above or otherwise obligated under this Note. The word "Lender" refers to LendingClub Bank, National Association, and any subsequent holder of this Note. For value received, Borrower promises to pay to the order of Lender the principal sum of $4,000 Dollars with interest as set forth below. Borrower intends to be legally bound by this Note. Borrower has read, understood, and agreed to all of the terms of this Note.

Interest Rate. This Note bears interest during each calendar month from the date hereof until paid in full, at a fixed rate of 19.99 (%) per annum (the "Interest Rate"). Interest will begin to accrue as of the date the loan proceeds are disbursed. After maturity, the unpaid balance of the principal will earn interest at the same fixed rate.

Interest Calculation Method. Interest is calculated daily on the basis of a 360-day year with 12 months each of which is 30 days (or 30/360) long, regardless if a month has more or fewer than 30 days. This Note shall bear interest on any overdue installment of principal and, to the extent permitted by applicable law, on any overdue installment of interest, at the Interest Rate as calculated above.

Payments. Principal and interest are to be paid during and throughout the period of 36 months in the following manner:

Payments of principal and interest in the amount of $148.64 Dollars are to be made by the Borrower to Lender commencing July 17, 2022 , and on the same day of each successive month thereafter until June 17, 2025 , when the full amount of unpaid principal, together with unpaid accrued interest is due and payable. If the monthly anniversary is on the 29th, 30th, or 31st of the month, and the following month does not have a 29th, 30th, or 31st day, the monthly payment will be due on the last day of the month in which the payment was due.

Borrower's last payment might be of a different amount, which could be higher than the monthly installment amounts, to adjust for rounding and/or due to calculation of daily interest charges in certain instances such as a payment due date change or Borrower making a payment after the payment due date. If any late charges or other fees and charges due to Lender have not been paid, as described further below, Borrower will also owe Lender additional amounts for those fees and charges. In such cases, the amount of the last monthly payment will be adjusted by the amount necessary to repay the loan in full.

Borrower must pay Lender in U.S. dollars using a check or electronic debit that is drawn on and honored by a bank in the United States. Borrower may not make payments in cash. Borrower agrees that Lender can accept late or partial payments, or payments marked "paid in full" or other restrictive endorsements, without losing its rights.

Borrower may have designated an account from which to pay the amount of each payment due on each due date by ACH transfer. Borrower acknowledges that such authorization is assignable by Lender or any subsequent holder of the Note in the event that Lender or any subsequent holder of the Note sells, assigns, or transfers any interest in this Note.

Loan proceeds may be disbursed into a deposit account designated by Borrower and held by or for the benefit of Borrower ("Designated Borrower Account") or, for the purpose of satisfying in whole or in part a debt obligation of Borrower, to an account held by or for the benefit of a third party creditor designated by Borrower ("Designated Creditor Account"). Borrower is responsible for ensuring that all names and account, routing or other similar information provided by Borrower to Lender for any Designated Borrower Accounts or Designated Creditor Accounts (collectively, "Designated Accounts") are accurate and complete. Borrower agrees to hold Lender and any subsequent holder of the Note harmless for any alleged or actual loss, claim, fee or other damage or expense Borrower may suffer related to the failure of a Designated Account to receive such proceeds if such failure was the result (directly or indirectly) of any error in any name or account, routing or other similar information provided by Borrower to Lender. Borrower acknowledges that neither Lender nor any subsequent holder of the Note has any obligation to confirm or investigate the accuracy or completeness of the information Borrower has provided. Borrower further agrees that, if loan proceeds are rejected by any Designated Creditor Account, Lender may deliver loan proceeds into any Designated Borrower Account to satisfy Lender's obligation of loan proceed delivery. In all events under this section, interest will begin to accrue as of the date of issuance of the loan , and not upon the actual



events under this section, interest will begin to accrue as of the date of issuance of the loan and not upon the actual receipt of proceeds by Borrower or any other designated third party, except that no interest will be due to the extent this Note is canceled as set forth in the Borrower Agreement. If Lender is unable to deliver any loan proceeds to any Designated Account after 14 days from the initial delivery attempt, the loan will be canceled and Borrower will not owe any interest on the loan. For avoidance of doubt, if partial loan proceeds (any amount above $0) are delivered to any Designated Account, then the loan will not be canceled. If Lender is only able to deliver partial loan proceeds to any Designated Account after 14 days, Lender will apply the undelivered portion to the outstanding balance in accordance with its normal payment application procedures.

If Borrower elects to make payments by check, Borrower must send the check either by regular mail or by overnight mail or UPS delivery to Lockbox Services - #134268, LendingClub Corporation, 3440 Flair Dr., El Monte, CA 91731 or to the address designated by any subsequent holder of the Note. If the loan is assigned, Borrower must make payments to the address provided by the assignee.

Borrower's payment method and any necessary authorization do not affect its obligation to pay when due all amounts payable on the Note, whether or not there are sufficient funds in the applicable deposit account. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff Lender may have.

Origination fee. If this loan is subject to an origination fee, such fee is deducted from the loan proceeds and paid to the Lender. Any origination fee of 5% or less of the initial loan amount is not refundable regardless of when, or if, the loan is paid in full. Any origination fee in excess of 5% of the initial loan amount is refundable on a prorated basis over the term of the loan when and if the loan is paid in full prior to its maturity date. A partial pre-payment will not result in the refund of any origination fee amount. Borrower acknowledges that the origination fee is considered part of the principal of Borrower's loan and is subject to the accrual of interest.

Insufficient funds fee. If a payment is returned, dishonored, or fails due to insufficient funds in the deposit account Borrower has designated for making payments, Borrower will be charged a fee of $15, to the extent permitted by applicable law. An insufficient funds fee may be assessed no more than once for a single failed payment. Lender may, at its option, choose to resubmit such payments. In addition to the fee assessed under this Note, a fee may be assessed by the depository institution at which Borrower's deposit account is held.

Late fee. If any part of a payment, other than a late fee assessed on a prior monthly payment, is more than 15 days late, a late fee may be charged in an amount equal to the greater of 5% of the outstanding payment or $15, to the extent permitted by applicable law. Only one late fee will be charged on each late payment. Any payment received after 11:00 A.M., Mountain Time, on a banking day may deemed received on the next succeeding banking day.

Prepayments and Partial Payments. Borrower may prepay this loan or make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment will be credited against the loan balance as described in the Payments section above. Any partial prepayment does not postpone the due date of any monthly payment, unless expressly agreed to in writing. If Borrower prepays this Note in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Lender may extend the time to make a payment without extending the time to make other payments, accept late or partial payments without waiving Lender's right to have future payments made when they are due, or waive any fee without losing the right to impose that fee when due in the future.

Use of Funds. Borrower certifies that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity, or to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous educational expenses, or room and board.

Default. Borrower will be deemed in default (each, an "Event of Default") of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the loan; (2) files or has instituted against it or any joint applicant/co-borrower any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, the Borrower Agreement or in any other documents, applications or related materials delivered to Lender in connection with its loan, or (4) has breached or otherwise fails to abide by the terms of this Note or the Borrower Agreement. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation, accelerate all amounts owed on this Note and demand that Borrower immediately pay such amounts.

Information Furnished to Credit Bureaus. Lender may report information about Borrower's account to credit bureaus. Should there be more than one Borrower, Lender may report that loan account to the credit bureaus in the names of all Borrowers. Late payments, missed payments, or other defaults on an account may be reflected in Borrower's credit report.



Borrower agrees to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

Joint and Several Liability. The liability of any joint applicant/co-borrower to repay in full this loan is in addition to and not in lieu of the obligations of the primary Borrower to repay the loan in full. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Note or any other agreements or documents provided or executed as part of the loan application process, as if an original signatory. Lender and its designees, successors, and assigns have sole discretion to proceed against any party responsible under this Note to recover all the amounts due under this Note. Further, Lender and its designees, successors, and assigns can accept instructions from either Borrower or the joint applicant/co-borrower, and can provide any notice or disclosure to either Borrower or the joint applicant/co-borrower, which shall be binding on and deemed simultaneously received by each.

Loan Charges. If a law that applies to the Loan and sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower.

Electronic Transactions. BORROWER EXPRESSLY AGREES THAT THE NOTE IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

Registration of Note Owners. Borrower has appointed Lender as its agent (in such capacity, the "**Note Registrar**") for the purpose of maintaining a book-entry system (the "**Register**") for recording the names and addresses of any future owner of beneficial interests in this Note (the "**Note Owners**") and the principal amounts and interest on this Note owing to each pursuant to the terms hereof from time to time. The person or persons identified as the Note Owners in the Register shall be treated as the owner(s) of this Note for purposes of receiving payment of principal and interest on such Note and for all other purposes. With respect to any transfer by a Note Owner of its beneficial interest in this Note, the right to payment of principal and interest on this Note shall not be effective until the transfer is recorded in the Register.

Miscellaneous. Lender may, without notice to Borrower, assign all of its right, title and interest (or any portion thereof) in this Note to any other third party. Borrower understands, acknowledges and agrees that any assignee may sell, assign or transfer the Note and all associated documents and information related to the Note without Borrower's consent or delivery of notice (subject in each case to the registration requirement above). Borrower may not assign this Note without the prior written consent of Lender. This Note inures to the benefit of successors, permitted assigns, heirs and representatives of Borrower and Lender.

Borrower hereby waives demand, notice of non-payment, protest, and all other notices or demands whatsoever, and hereby consents that without notice to and without releasing the liability of any party, the obligations evidenced by this Note may from time to time, in whole or part, be renewed, extended, modified, accelerated, compromised, settled, canceled (as provided for in the Borrower Agreement) or released by Lender.

Borrower shall pay any and all government fees and taxes (including but not limited to stamp and documentary taxes) incurred in connection with the execution of this Note, the Borrower Agreement, or any other documents associated with the loan. Lender may choose, in its sole discretion, to collect from and remit on behalf of Borrower the amount of any such fees and taxes, and to add such amount to the principal balance of the loan. Amounts paid to others on Borrower's behalf in connection with loan origination are shown in the Truth in Lending disclosure corresponding to the loan.

Any changes to this Note must be in writing signed by Borrower and Lender. Notices will be provided electronically to Borrower's account, unless Borrower has opted out of electronic delivery and then will be mailed to the addresses then on record. Notwithstanding the foregoing, Lender may correct any clerical error or omissions in this Note or in any related document. Lender will notify Borrower promptly of any such errors and the correction made promptly upon discovery. Borrower agrees that such correction will be effective as of the original date of this Note. Examples of clerical errors include, but are not limited to, calculation, transcription and printing errors.

This Note is subject to the Arbitration Agreement in the Borrower Agreement between Lender and Borrower. If at any time after the date of this Note, any of the provisions of this Note shall be held by any court of competent jurisdiction or arbitrator to be illegal, void or unenforceable, and that decision is not overturned after any rights to appeal are exhausted, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Note.

Controlling Law. Lender is located in the State of Utah, this Note is executed and delivered in the State of Utah and is a

Governing Law: Lender is located in the State of Utah, this Note is executed and delivered in the State of Utah and is a contract made under the law of the State of Utah, and funds are disbursed from the State of Utah. The provisions of this Note will be governed by Federal laws and the laws of the State of Utah to the extent not preempted, without regard to any principle of conflicts of law that would require or permit the application of the laws of any other jurisdiction.

**STATE LAW NOTICES:**

CALIFORNIA RESIDENTS ONLY: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by § 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

KANSAS: NOTICE TO CONSUMER: 1. Do not sign this Note before you read it. 2. You are entitled to a copy of this Note. 3. You may prepay the unpaid balance at any time without penalty.

MASSACHUSETTS RESIDENTS ONLY: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF SUCH DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT BORROWER(S) AND THE LENDER AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEW JERSEY RESIDENTS: The section headings of the Note are a table of contents and not contract terms. Portions of this Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Note, actions or practices (i) by which Lender is or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may be or will be taken by Lender unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND and VERMONT RESIDENTS: Borrower understands and agrees that Lender may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If Borrower asks, Borrower will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. Borrower also understands and agrees that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to Borrower as a result of this application or for other legitimate purposes related to such loans.

OHIO RESIDENTS ONLY: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

WASHINGTON RESIDENTS ONLY: Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

WISCONSIN RESIDENTS ONLY: For married Wisconsin residents, Borrower's signature confirms that this loan obligation is being incurred in the interest of Borrower's marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which Borrower is applying is granted, Borrower will notify Lender if Borrower has a spouse who needs to receive notification that credit has been extended to Borrower.

MEMBER ID OF BORROWER & CO-BORROWER (if any) 247318830
BY: LENDINGCLUB BANK, NATIONAL ASSOCIATION
ATTORNEY-IN-FACT FOR BORROWER and CO-BORROWER (if any)
(SIGNED ELECTRONICALLY)

# Exhibit B

Received S&A 02/21/2025

Exhibit B



**Borrower Agreement**

*Last updated November, 2021.*

**Please read this Borrower Agreement carefully and print or save a copy for future reference.**

This Borrower Agreement is between you ("you" and "your" mean you and each and every other borrower, including any joint applicant/co-borrower, who is obtaining a loan from us) and LendingClub Bank, National Association ("we," "us," "our," and "LendingClub"). If you request a loan from us, and if that request results in a loan that is approved and funded, then your loan will be governed by the terms of this Borrower Agreement and the Loan Agreement and Promissory Note, which is attached to this Borrower Agreement as Exhibit A (the "Loan Agreement"), as may be revised from time to time. The version of the Loan Agreement in effect when you make a loan request will apply to any loan made in response to that request, and any separate loan would be governed by the version of the Loan Agreement then in effect. By consenting to this Borrower Agreement, you are also agreeing to the Loan Agreement and authorizing us to complete the Loan Agreement as necessary to facilitate your loan request. This Borrower Agreement will terminate if your loan request is cancelled, withdrawn, or declined.

BY ELECTRONICALLY SIGNING THIS BORROWER AGREEMENT, YOU HAVE SIGNIFIED YOUR AGREEMENT TO THESE TERMS.

**1. Loan Terms.** Your loan will have a principal balance in the amount set forth in the final Truth in Lending disclosure ("TIL Disclosure") and Loan Agreement corresponding to your loan. You agree and acknowledge that any preliminary loan disclosures made to you prior to the disbursement of loan proceeds may be revised based on the actual, initial principal balance of the loan. All loans are unsecured, fully-amortizing, closed-end loans for the term stated in your TIL Disclosure and Loan Agreement. Your obligations, including your obligation to repay principal and interest, are set forth in the TIL Disclosure and the Loan Agreement. Other fees and terms of the loan will also be set forth in the Loan Agreement. All payments are to be applied to your obligations as we determine in our sole discretion, except to the extent applicable law requires that we apply payments in a specific manner.

**2. Limited Power of Attorney Grant.** As a condition to receiving a loan from us, you hereby grant to us a limited power of attorney ("Power of Attorney") and appoint us as your true and lawful attorney-in-fact and agent, with full power of substitution and re-substitution, for you and in your name, place and stead, in any and all capacities, to:

- Complete and execute the Loan Agreement(s) in the form attached as Exhibit A that reflect the accepted terms set forth in each of your final TIL Disclosure(s) as such may be posted in response to your loan request(s) in the online account you have established, or will establish, with us ("Online Account");
- Agree to any changes necessary to correct any errors or omissions in any Loan Agreement(s) before or after execution; provided that notice is given to you; and
- Otherwise act with full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection with the exercise of such other powers above as fully to all intents and purposes as you might or could do in person.

This Power of Attorney is limited solely to the purpose described above and will expire automatically upon the termination of this Borrower Agreement. You may revoke this Power of Attorney by contacting us at support@lendingclub.com or calling 888-596-3157 and cancelling your loan request; provided, however, if a loan request has been approved you must provide such notice before the loan proceeds are transferred to a Designated Account and before the Loan Agreement is executed on your behalf. The performance of any of the foregoing acts by us on your behalf will occur in the State of Utah. Once the Loan Agreement is signed by us or our designee acting as your attorney-in-fact, it is deemed executed on your behalf and shall be your valid and binding obligation thereafter.

**3. Loan Consummation.** YOU AGREE AND ACKNOWLEDGE THAT YOU ARE NOT OBLIGATED UNDER THE TERMS OF THE LOAN AGREEMENT, AND THE LOAN TRANSACTION BETWEEN YOU AND US IS NOT COMPLETED (I.E., CONSUMMATED), UNTIL YOUR LOAN HAS BEEN FUNDED. YOU ACKNOWLEDGE THAT WE ARE MATERIALLY RELYING UPON THIS UNDERSTANDING IN UNDERTAKING THE POTENTIAL ISSUANCE OF YOUR LOAN.

**4. Information for Members of the Armed Forces and their Dependents.** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). If you are a member of the Armed Forces, or a dependent of a member of the Armed Forces, you may call (844) 538-6754 to hear the preceding statement and certain payment-related information.



**5. Use of Loan Proceeds.** You agree that you will not use any loan proceeds: (i) to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous educational expenses, or room and board; (ii) to fund any illegal activity or any other activity or use not otherwise allowed under this Borrower Agreement or the terms applicable to any products or services that we offer (each, a "Service"), including but not limited to all LendingClub websites and the subdomains thereof (collectively, the "Site") and the group of financial service technologies that LendingClub or any of its affiliates have developed to enable the services we facilitate or provide (collectively, the "LC Platform"); (iii) for the purpose of purchasing or carrying any securities; or (iv) for the purpose of investing, trading, or speculating in any currencies, including without limitation cryptocurrencies or digital currencies or any futures or derivatives thereof. You further acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of all information you provide to us and all representations you make to us.

**6. Joint and Several Liability.** The liability of any joint applicant/co-borrower under this Borrower Agreement and under the Loan Agreement is in addition to and not in lieu of the obligations of the primary borrower. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Borrower Agreement, the Loan Agreement, and any other agreements and documents provided or executed as part of the loan application process, as if an original signatory.

We (and our designees, successors, and assigns) have sole discretion to proceed, at any time, against any party responsible under this Borrower Agreement. Further, we (and our designees, successors, and assigns) can accept instructions from either you or the joint applicant/co-borrower, and can provide any notice or disclosure to either you or the joint applicant/co-borrower, which shall be binding on and deemed simultaneously received by each.

**7. Consent for Communications.** You expressly consent and agree to receive communications (including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system) from us, our affiliates, successors and assigns, and designated third-party service providers acting on our behalf, regarding any loan or account application that you submit or attempt to submit to us, any loan that you obtain from or through us, and any account that you establish with us, at any telephone number that you provide to us or that we can reasonably associate with you (through skip trace, caller ID capture or other means), now and in the future, including cellular telephone numbers. You agree to notify us if any telephone number associated with any such application, loan, or account, changes or is reassigned to a new subscriber. You certify that you are authorized to provide this consent because you are either the subscriber of the telephone number you provide or a non-subscriber customary user with authority to provide this consent. Standard communication rates, fees, and charges from your telephone service provider may apply. You agree that we may monitor and record any communications between you and us for quality assurance and other permitted business purposes. You understand and agree that we may always communicate with you in any manner allowed by law that does not require your consent.

**8. Assignment; Servicing; Registration.** We may sell, assign, or transfer this Borrower Agreement and the Loan Agreement, or any of our rights under this Borrower Agreement or the Loan Agreement, in whole or in part at any time. You understand, acknowledge and agree that a third-party assignee may further sell, assign or transfer your Loan Agreement and all associated documents and information related to the Loan Agreement, in whole or in part at any time, without your consent or notice to you (subject to applicable law and the registration requirement below). You further understand and agree that we and any assignee of the Loan Agreement may share account information with any servicer or sub-servicer. You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Borrower Agreement or any Loan Agreement to another person without our prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this section 8 shall be null and void. Subject to applicable law, we may delegate servicing of any loan you obtain to another entity in our sole discretion without notice, and any subsequent holder of the Loan Agreement may act as servicer of any loan that you obtain, and may delegate servicing to another entity in its sole discretion without notice.

You hereby appoint us as your agent (in such capacity, the "Note Registrar") for the purpose of maintaining a book-entry system (the "Register") for recording the names and addresses of any owner of beneficial interests in this Note (the "Note Owners") and the principal amounts and interest on this Note owing to each pursuant to the terms hereof from time to time. The person or persons identified as the Note Owners in the Register shall be treated as the owner(s) of this Note for purposes of receiving payment of principal and interest on such Note and for all other purposes. With respect to any transfer by a Note Owner of its beneficial interest in this Note, the right to payment of principal and interest on this Note shall not be effective until the transfer is recorded in the Register.

**9. Entire Agreement.** This Borrower Agreement, together with any corresponding Loan Agreement, the Application Terms and Conditions, any other document provided or executed as part of the loan application process, represent the entire agreement between you and us regarding the subject matter hereof and supersede all prior or contemporaneous communications, promises and proposals, whether oral, written or electronic, between you and us with respect to your loan request and loan.



**10. Electronic Transactions.** THIS BORROWER AGREEMENT IS FULLY SUBJECT TO YOUR CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES.

**11. Notices.** Unless we state otherwise in this Borrower Agreement, all notices to be provided to us under this Borrower Agreement must be sent to us at LendingClub Bank, N.A., 595 Market Street, Suite 200, San Francisco, California 94105, Attention: Legal Department. All notices and other communications from us to you hereunder may be given by email to your registered email address or posted in your Online Account, and shall be deemed to have been duly given and effective upon transmission. You acknowledge that you have control of such email account and your Online Account, and that communications from us may contain sensitive, confidential, and collections-related communications. If your registered email address changes, you must notify us of the change by sending an email to support@lendingclub.com or calling 888-596-3157. You also agree to update your registered residence address and telephone number if they change, which you may do in your Online Account. You acknowledge and agree that, if your loan is assigned, you must notify your loan servicer of any changes to your contact information.

**12. NO WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN THIS BORROWER AGREEMENT, WE MAKE NO REPRESENTATIONS OR WARRANTIES TO YOU, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**13. LIMITATION ON LIABILITY.** IN NO EVENT SHALL WE BE LIABLE TO YOU FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY TO YOU REGARDING THE EFFECT THAT THIS BORROWER AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

**14. Controlling Law.** We are located in the State of Utah, this Borrower Agreement is entered into in the State of Utah and is a contract made under the law of the State of Utah, and funds for loans are disbursed from the State of Utah. The provisions of this Borrower Agreement will be governed by Federal laws and the laws of the State of Utah to the extent not preempted, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction.

**15. Miscellaneous.** The parties acknowledge that there are no third-party beneficiaries to this Borrower Agreement. Any waiver of a breach of any provision of this Borrower Agreement will not be a waiver of any other subsequent breach. Failure or delay by either party to enforce any term or condition of this Borrower Agreement will not constitute a waiver of such term or condition. Without limiting the foregoing, we may extend the time to make a payment without extending the time to make other payments, accept late or partial payments without waiving our right to have future payments made when they are due, or waive any fee without losing the right to impose that fee when due in the future. If at any time after the date of this Borrower Agreement, any of the provisions of this Borrower Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Borrower Agreement. The headings in this Borrower Agreement are for reference purposes only and shall not affect the interpretation of this Borrower Agreement in any way. You acknowledge and agree that this Borrower Agreement, including Section 16 below, shall apply to any assignee or subsequent holder of the loan.

**16. Arbitration Agreement.** RESOLUTION OF DISPUTES: PLEASE READ THIS PROVISION CAREFULLY. IT AFFECTS YOUR RIGHTS AND WILL IMPACT HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED. IF YOU DO NOT OPT OUT OF THIS ARBITRATION AGREEMENT AS PROVIDED IN SECTION 16(b) BELOW. IF YOU ARE A "COVERED BORROWER" AS DEFINED BY THE MILITARY LENDING ACT (32 C.F.R. §§ 232, AS AMENDED FROM TIME TO TIME), THIS SECTION 16 (ARBITRATION AGREEMENT) IS NOT APPLICABLE TO YOU AND YOU DO NOT NEED TO TAKE FURTHER ACTION TO OPT OUT. FOR PURPOSES OF THIS SECTION 16 (ARBITRATION AGREEMENT), THE TERMS "WE," "US," AND "OUR" INCLUDE LENDINGCLUB BANK, NATIONAL ASSOCIATION, LENDINGCLUB CORPORATION, AND/OR THEIR RESPECTIVE AFFILIATES, RELATED PERSONS OR ENTITIES, AND ANY PREDECESSORS AND SUCCESSORS IN INTEREST; ANY SUBSEQUENT HOLDER OF ANY LOAN YOU OBTAIN; AND ANY ASSIGNEE OF ANY CORRESPONDING LOAN AGREEMENT.

YOU AND WE ACKNOWLEDGE THAT WE AND YOU HAVE A RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER WE OR YOU ELECTS TO HAVE A DISPUTE DECIDED THROUGH ARBITRATION PURSUANT TO THIS ARBITRATION AGREEMENT. YOU AND WE NEVERTHELESS HEREBY KNOWINGLY AND VOLUNTARILY WAIVE OUR RIGHTS TO LITIGATE CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER YOU OR US.

a. **You and We Agree to Arbitrate Disputes Between Us.** Either you or we may, at either's sole election, require that the sole and exclusive forum for resolution of a Claim be final and binding arbitration pursuant to this Section 16 ("Arbitration Agreement"), unless you opt out as provided in Section 16(b) below. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court, so long as the Claim remains in such court and advances only on an



individual (non-class, non-representative) basis and seeks relief only applicable to you.

As used in this Arbitration Agreement, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us (or persons claiming through or connected with us), on the other hand, relating to or arising out of the Borrower Agreement, the Loan Agreement, any Service (including but not limited to the Site and the LC Platform), any loan application, loan request, or loan, and/or the activities or relationships that involve, lead to, or result from any of the foregoing. Claims are subject to arbitration regardless of whether they arise from contract, tort (intentional or otherwise), a constitution, statute, common law, principles of equity, or any other legal theory. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise.

The scope of this Arbitration Agreement is to be given the broadest possible interpretation that is enforceable. Your agreement to the Borrower Agreement is made pursuant to a transaction in interstate commerce, and thus the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., governs the interpretation and enforcement of this Arbitration Agreement.

b. **Opt Out Procedure.** You may opt out of this Arbitration Agreement for all purposes by sending an arbitration opt-out notice to LendingClub Bank, N.A., 595 Market Street, Suite 200, San Francisco, California 94105, Attention: Legal Department, which is received at the specified address within 30 days of the date of your electronic acceptance of the Borrower Agreement. The opt-out notice must clearly state that you are rejecting arbitration; identify the Borrower Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send an opt-out notice by mail, delivery service (e.g., UPS, FedEx), or courier as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Agreement. If the opt-out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt-out notice on your behalf. If you opt out of this Arbitration Agreement, all other parts of the Borrower Agreement will continue to apply.

c. **Pre-Arbitration Notice of Dispute.** If a Claim arises, our goal is to learn about and address your concerns and, if we are unable to do so to your satisfaction, to provide you with a neutral and cost-effective means of resolving the dispute quickly. Before filing any claim in arbitration, you may notify us of a Claim or dispute you may have by sending an email to customeradvocacy@lendingclub.com at any time, or by calling (888) 596-3157 from Mon-Fri 6:00 AM to 5:00 PM PT and Sat 8:00 AM to 5:00 PM PT.

d. **Arbitration Procedures.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator or arbitrators instead of a judge or jury, and court review of an arbitration award is very limited. The arbitrator(s) can award the same damages or other types of relief on an individual basis that a court could under applicable law, subject to the limitations set forth in this Arbitration Agreement. All issues are for the arbitrator(s) to decide, except issues relating to arbitrability, the scope or enforceability of this Arbitration Agreement, or the interpretation or enforceability of Section 16(f) below (Prohibition of Class and Representative Actions and Non-Individualized Relief) shall be for a court of competent jurisdiction to decide.

The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent such rules or policies conflict with this Arbitration Agreement or any countervailing applicable law. If you have any questions concerning the AAA or would like to obtain a copy of the AAA arbitration rules, you may call 1(800) 778-7879 or visit the AAA's web site at: www.adr.org. If you have any questions concerning JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800) 352-5267 or visit JAMS's web site at: www.jamsadr.com. In the case of a conflict between the rules and policies of the administrator and this Arbitration Agreement, this Arbitration Agreement shall control, subject to countervailing applicable law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

If the value of the relief sought is $10,000 or less, you or we may elect to have the arbitration conducted by telephone or based solely on written submissions, which election shall be binding on you and us subject to the discretion of the arbitrator(s) to require an in-person hearing, if the circumstances warrant. Attendance at an in-person hearing may be made by telephone by you and/or us, unless the arbitrator(s) requires otherwise.

Except to the extent preempted, superseded, or supplemented by Federal law, the arbitrator(s) will apply the substantive law of the State of Utah, without regard to principles of conflicts of law, to any dispute or Claim in arbitration, including recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator shall take steps to reasonably protect confidential information. The award of the arbitrator(s) shall be final and binding, and judgment on the award may be entered in any court of competent jurisdiction.



e. **Costs of Arbitration.** If we elect arbitration, we shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing applicable law, if contrary to the administrator's rules. We shall pay the administrator's hearing fees for up to one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, you request that we pay them and we agree to do so, or you are able to demonstrate to the arbitrator(s) that the costs of accessing arbitration will be prohibitive as compared to the costs of accessing a court for purposes of pursuing litigation on an individual basis. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by countervailing applicable law.

f. **Prohibition of Class and Representative Actions and Non-Individualized Relief.** NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS A PRIVATE ATTORNEY GENERAL ACTION ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED OR COULD HAVE BEEN ASSERTED IN COURT ON A PURPORTED CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS. YOU AND WE ALSO AGREE NOT TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION AGAINST US OR YOU. UNLESS CONSENTED TO IN WRITING BY ALL PARTIES TO THE ARBITRATION: (1) NO PARTY TO THE ARBITRATION MAY JOIN, CONSOLIDATE, OR OTHERWISE BRING CLAIMS FOR OR ON BEHALF OF TWO OR MORE INDIVIDUALS OR ENTITIES IN THE SAME ARBITRATION UNLESS THOSE PERSONS OR ENTITIES ARE PARTIES TO A SINGLE TRANSACTION, AND (2) AN AWARD IN ARBITRATION SHALL DETERMINE THE RIGHTS AND OBLIGATIONS OF THE NAMED PARTIES ONLY, AND ONLY WITH RESPECT TO THE CLAIMS IN ARBITRATION, AND SHALL NOT (A) DETERMINE THE RIGHTS, OBLIGATIONS, OR INTERESTS OF ANYONE OTHER THAN A NAMED PARTY, OR RESOLVE ANY CLAIM OF ANYONE OTHER THAN A NAMED PARTY; NOR (B) MAKE AN AWARD FOR THE BENEFIT OF, OR AGAINST, ANYONE OTHER THAN A NAMED PARTY. NO ADMINISTRATOR OR ARBITRATOR SHALL HAVE THE POWER OR AUTHORITY TO WAIVE, MODIFY, OR FAIL TO ENFORCE THIS SECTION 16(F), AND ANY ATTEMPT TO DO SO, WHETHER BY RULE, POLICY, ARBITRATION DECISION OR OTHERWISE, SHALL BE INVALID AND UNENFORCEABLE. ANY CHALLENGE TO THE VALIDITY OF THIS SECTION 16(F) SHALL BE DETERMINED EXCLUSIVELY BY A COURT OF COMPETENT JURISDICTION AND NOT BY THE ADMINISTRATOR OR ANY ARBITRATOR.

g. **Survival and Severability.** This Arbitration Agreement shall survive (i) the suspension, termination, revocation, closure of, or amendments to, the Borrower Agreement, Loan Agreement, and/or the relationship between you and us; (ii) the bankruptcy or insolvency of you or us or any other person; and (iii) any transfer or assignment of any loan or Loan Agreement(s) or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity.

If any portion of this Arbitration Agreement other than Section 16(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Agreement shall nevertheless remain valid and in force. If a court decides that any of the provisions of Section 16(f) above is invalid or unenforceable because it would prevent the exercise of a nonwaivable right to pursue public injunctive relief and that decision is not overturned after any rights to appeal are exhausted, then any dispute regarding the entitlement to such relief (and only that form of relief) must be severed from arbitration and may be litigated in court. Also, if a court decides that any of the provisions of Section 16(f) above is invalid or unenforceable for any other reason and that decision is not overturned after any rights to appeal are exhausted, then any dispute or Claim that may not be arbitrated in accordance with the provisions of Section 16(f) that are held to be invalid or unenforceable must be severed from arbitration and may be litigated in court. For the sake of clarity, in no event shall any court decision finding a provision of Section 16(f) invalid or unenforceable be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Agreement.

**17. Loan Cancellation.** YOU MAY CANCEL THE LOAN AGREEMENT AT ANY TIME UP TO MIDNIGHT PACIFIC TIME OF THE FIFTH CALENDAR DAY AFTER THE LOAN HAS BEEN FUNDED OR, IF THE FIFTH CALENDAR DAY IS A SUNDAY OR IS DEEMED A HOLIDAY BY US, MIDNIGHT PACIFIC TIME OF THE NEXT BUSINESS DAY FOLLOWING SUCH SUNDAY OR HOLIDAY. YOUR LOAN AGREEMENT MAY BE CANCELLED BY TELEPHONE AT THE PHONE NUMBER BELOW BETWEEN THE HOURS OF 5:00 AM TO 5:00 PM PACIFIC TIME, MONDAY THROUGH FRIDAY AND 8:00 AM TO 5:00 PM PACIFIC TIME SATURDAYS, EXCEPT FOR DAYS DEEMED HOLIDAYS BY US, OR VIA EMAIL AT THE ADDRESS BELOW. CANCELLATION OUTSIDE OF NORMAL BUSINESS HOURS CAN ONLY BE MADE VIA EMAIL. CANCELLATION BY EMAIL WILL BE DETERMINED BY THE TIME STAMP ON THE EMAIL AS IT APPEARS IN OUR OR OUR AGENT'S INBOX. IF YOU DECIDE TO CANCEL, ALL LOAN PROCEEDS WILL BE WITHDRAWN FROM YOUR ACCOUNT WITHIN TEN (10) BUSINESS DAYS AFTER WE RECEIVE NOTICE OF YOUR LOAN CANCELLATION. IF WE OR OUR AGENTS CANNOT WITHDRAW THE FULL AMOUNT FROM YOUR BANK ACCOUNT AND YOU DO NOT OTHERWISE RETURN THE LOAN PROCEEDS WITHIN THE TEN (10) BUSINESS DAY PERIOD REFERENCED ABOVE, YOU WILL STILL BE RESPONSIBLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE BORROWER AGREEMENT AND THE LOAN AGREEMENT, INCLUDING BUT NOT LIMITED TO PAYMENT OF ANY FEES, INTEREST, AND PRINCIPAL OF THE LOAN. YOU MAY CANCEL THE LOAN AGREEMENT BY CONTACTING US AT



SUPPORT@LENDINGCLUB.COM OR CALLING 888-596-3157.

IN OUR SOLE DISCRETION, WE MAY TERMINATE THIS BORROWER AGREEMENT, AND ANY RELATED LOAN AGREEMENT, FOR ANY REASON PRIOR TO THE FUNDING OF YOUR LOAN.

## Exhibit A
**Loan Agreement and Promissory Note**
Borrower Member ID: _____

Joint Applicant/Co-Borrower Member ID: _____

$_____

_____, 20_

In this Loan Agreement and Promissory Note (the "Note"), the word "Borrower" refers to each borrower and joint applicant/co-borrower named above or otherwise obligated under this Note. The word "Lender" refers to LendingClub Bank, National Association, and any subsequent holder of this Note. For value received, Borrower promises to pay to the order of Lender the principal sum of _____ ($_____) Dollars with interest as set forth below. Borrower intends to be legally bound by this Note. Borrower has read, understood, and agreed to all of the terms of this Note.

Interest Rate. This Note bears interest during each calendar month from the date hereof until paid in full, at a fixed rate of _____ (%) per annum (the "Interest Rate"). Interest will begin to accrue as of the date the loan proceeds are disbursed. After maturity, the unpaid balance of the principal will earn interest at the same fixed rate.

Interest Calculation Method. Interest is calculated daily on the basis of a 360-day year with 12 months each of which is 30 days (or 30/360) long, regardless if a month has more or fewer than 30 days. This Note shall bear interest on any overdue installment of principal and, to the extent permitted by applicable law, on any overdue installment of interest, at the Interest Rate as calculated above.

Payments. Principal and interest are to be paid during and throughout the period of _____ months in the following manner:

Payments of principal and interest in the amount of _____ ($____ _) Dollars are to be made by Borrower to Lender commencing _____, 20_, and on the same day of each successive month thereafter until _____, 20_, when the full amount of unpaid principal, together with unpaid accrued interest is due and payable. If the monthly anniversary is on the 29th, 30th, or 31st of the month, and the following month does not have a 29th, 30th, or 31st day, the monthly payment will be due on the last day of the month in which the payment was due.

Borrower's last payment might be of a different amount, which could be higher than the monthly installment amounts, to adjust for rounding and/or due to calculation of daily interest charges in certain instances such as a payment due date change or Borrower making a payment after the payment due date. If any late charges or other fees and charges due to Lender have not been paid, as described further below, Borrower will also owe Lender additional amounts for those fees and charges. In such cases, the amount of the last monthly payment will be adjusted by the amount necessary to repay the loan in full.

Borrower must pay Lender in U.S. dollars using a check or electronic debit that is drawn on and honored by a bank in the United States. Borrower may not make payments in cash. Borrower agrees that Lender can accept late or partial payments, or payments marked "paid in full" or other restrictive endorsements, without losing its rights.

Borrower may have designated an account from which to pay the amount of each payment due on each due date by ACH transfer. Borrower acknowledges that such authorization is assignable by Lender or any subsequent holder of the Note in the event that Lender or any subsequent holder of the Note sells, assigns, or transfers any interest in this Note.

Loan proceeds may be disbursed into a deposit account designated by Borrower and held by or for the benefit of Borrower ("Designated Borrower Account") or, for the purpose of satisfying in whole or in part a debt obligation of Borrower, to an account held by or for the benefit of a third party creditor designated by Borrower ("Designated Creditor Account"). Borrower is responsible for ensuring that all names and account, routing or other similar information provided by Borrower to Lender for any Designated Borrower Accounts or Designated Creditor Accounts (collectively, "Designated Accounts") are accurate and complete. Borrower agrees to hold Lender and any subsequent holder of the Note harmless for any alleged or actual loss, claim, fee or other damage or expense Borrower may suffer related to the failure of a Designated Account to receive such proceeds if such failure was the result (directly or indirectly) of any error in any name or account, routing or other similar information provided by Borrower to Lender. Borrower acknowledges that neither Lender nor any subsequent holder of the Note has any obligation to confirm or investigate the accuracy or completeness of the information Borrower has provided. Borrower further agrees that, if loan proceeds are rejected by any Designated Creditor Account, Lender may deliver loan



proceeds into any Designated Borrower Account to satisfy Lender's obligation of loan proceed delivery. In all events under this section, interest will begin to accrue as of the date of issuance of the loan and not upon the actual receipt of proceeds by Borrower or any other designated third party, except that no interest will be due to the extent this Note is canceled as set forth in the Borrower Agreement. If Lender is unable to deliver any loan proceeds to any Designated Account after 14 days from the initial delivery attempt, the loan will be canceled and Borrower will not owe any interest on the loan. For avoidance of doubt, if partial loan proceeds (any amount above $0) are delivered to any Designated Account, then the loan will not be canceled. If Lender is only able to deliver partial loan proceeds to any Designated Account after 14 days, Lender will apply the undelivered portion to the outstanding balance in accordance with its normal payment application procedures.

If Borrower elects to make payments by check, Borrower must send the check either by regular mail or by overnight mail or UPS delivery to Lockbox Services - #134268, LendingClub Corporation, 3440 Flair Dr., El Monte, CA 91731 or to the address designated by any subsequent holder of the Note. If the loan is assigned, Borrower must make payments to the address provided by the assignee.

Borrower's payment method and any necessary authorization do not affect its obligation to pay when due all amounts payable on the Note, whether or not there are sufficient funds in the applicable deposit account. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff Lender may have.

Origination fee. If this loan is subject to an origination fee, such fee is deducted from the loan proceeds and paid to the Lender. Any origination fee of 5% or less of the initial loan amount is not refundable regardless of when, or if, the loan is paid in full. Any origination fee amount in excess of 5% of the initial loan amount is refundable on a prorated basis over the term of the loan when and if the loan is paid in full prior to its maturity date. A partial pre-payment will not result in the refund of any origination fee amount. Borrower acknowledges that the origination fee is considered part of the principal of Borrower's loan and is subject to the accrual of interest.

Insufficient funds fee. If a payment is returned, dishonored, or fails due to insufficient funds in the deposit account Borrower has designated for making payments, Borrower will be charged a fee of $15, to the extent permitted by applicable law. An insufficient funds fee may be assessed no more than once for a single failed payment. Lender may, at its option, choose to resubmit such payments. In addition to the fee assessed under this Note, a fee may be assessed by the depository institution at which Borrower's deposit account is held.

Late fee. If any part of a payment, other than a late fee assessed on a prior monthly payment, is more than 15 days late, a late fee may be charged in an amount equal to the greater of 5% of the outstanding payment or $15, to the extent permitted by applicable law. Only one late fee will be charged on each late payment. Any payment received after 11:00 A.M., Mountain Time, on a banking day may deemed received on the next succeeding banking day.

Prepayments and Partial Payments. Borrower may prepay this loan or make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment will be credited against the loan balance as described in the Payments section above. Any partial prepayment does not postpone the due date of any monthly payment, unless expressly agreed to in writing. If Borrower prepays this Note in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Lender may extend the time to make a payment without extending the time to make other payments, accept late or partial payments without waiving Lender's right to have future payments made when they are due, or waive any fee without losing the right to impose that fee when due in the future.

Use of Funds. Borrower certifies that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity, or to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous educational expenses, or room and board.

Default. Borrower will be deemed in default (each, an "Event of Default") of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the loan; (2) files or has instituted against it or any joint applicant/co-borrower any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, the Borrower Agreement or in any other documents, applications or related materials delivered to Lender in connection with its loan, or (4) has breached or otherwise fails to abide by the terms of this Note or the Borrower Agreement. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation, accelerate all amounts owed on this Note and demand that Borrower immediately pay such amounts.

Information Furnished to Credit Bureaus. Lender may report information about Borrower's account to credit bureaus. Should there be more than one Borrower, Lender may report that loan account to the credit bureaus in the names of all Borrowers.



Late payments, missed payments, or other defaults on an account may be reflected in Borrower's credit report. Borrower agrees to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

Joint and Several Liability. The liability of any joint applicant/co-borrower to repay in full this loan is in addition to and not in lieu of the obligations of the primary Borrower to repay the loan in full. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Note or any other agreements or documents provided or executed as part of the loan application process, as if an original signatory. Lender and its designees, successors, and assigns have sole discretion to proceed against any party responsible under this Note to recover all the amounts due under this Note. Further, Lender and its designees, successors, and assigns can accept instructions from either Borrower or the joint applicant/co-borrower, and can provide any notice or disclosure to either Borrower or the joint applicant/co-borrower, which shall be binding on and deemed simultaneously received by each.

Loan Charges. If a law that applies to the Loan and sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower.

Electronic Transactions. BORROWER EXPRESSLY AGREES THAT THE NOTE IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

Registration of Note Owners. Borrower has appointed Lender as its agent (in such capacity, the "**Note Registrar**") for the purpose of maintaining a book-entry system (the "**Register**") for recording the names and addresses of any future owner of beneficial interests in this Note (the "**Note Owners**") and the principal amounts and interest on this Note owing to each pursuant to the terms hereof from time to time. The person or persons identified as the Note Owners in the Register shall be treated as the owner(s) of this Note for purposes of receiving payment of principal and interest on such Note and for all other purposes. With respect to any transfer by a Note Owner of its beneficial interest in this Note, the right to payment of principal and interest on this Note shall not be effective until the transfer is recorded in the Register.

Miscellaneous. Lender may, without notice to Borrower, assign all of its right, title and interest (or any portion thereof) in this Note to any other third party. Borrower understands, acknowledges and agrees that any assignee may sell, assign or transfer the Note and all associated documents and information related to the Note without Borrower's consent or delivery of notice (subject in each case to the registration requirement above). Borrower may not assign this Note without the prior written consent of Lender. This Note inures to the benefit of successors, permitted assigns, heirs and representatives of Borrower and Lender.

Borrower hereby waives demand, notice of non-payment, protest, and all other notices or demands whatsoever, and hereby consents that without notice to and without releasing the liability of any party, the obligations evidenced by this Note may from time to time, in whole or part, be renewed, extended, modified, accelerated, compromised, settled, canceled (as provided for in the Borrower Agreement) or released by Lender.

Borrower shall pay any and all government fees and taxes (including but not limited to stamp and documentary taxes) incurred in connection with the execution of this Note, the Borrower Agreement, or any other documents associated with the loan. Lender may choose, in its sole discretion, to collect from and remit on behalf of Borrower the amount of any such fees and taxes, and to add such amount to the principal balance of the loan. Amounts paid to others on Borrower's behalf in connection with loan origination are shown in the Truth in Lending disclosure corresponding to the loan.

Any changes to this Note must be in writing signed by Borrower and Lender. Notices will be provided electronically to Borrower's account, unless Borrower has opted out of electronic delivery and then will be mailed to the addresses then on record. Notwithstanding the foregoing, Lender may correct any clerical error or omissions in this Note or in any related document. Lender will notify Borrower promptly of any such errors and the correction made promptly upon discovery. Borrower agrees that such correction will be effective as of the original date of this Note. Examples of clerical errors include, but are not limited to, calculation, transcription and printing errors.

This Note is subject to the Arbitration Agreement in the Borrower Agreement between Lender and Borrower. If at any time after the date of this Note, any of the provisions of this Note shall be held by any court of competent jurisdiction or arbitrator to be illegal, void or unenforceable, and that decision is not overturned after any rights to appeal are exhausted, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Note.



**Controlling Law.** Lender is located in the State of Utah, this Note is executed and delivered in the State of Utah and is a contract made under the law of the State of Utah, and funds are disbursed from the State of Utah. The provisions of this Note will be governed by Federal laws and the laws of the State of Utah to the extent not preempted, without regard to any principle of conflicts of law that would require or permit the application of the laws of any other jurisdiction.

**STATE LAW NOTICES:**

**CALIFORNIA** RESIDENTS ONLY: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by A§ 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

**CALIFORNIA** AND **UTAH** RESIDENTS: As required by California and Utah law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

**KANSAS:** NOTICE TO CONSUMER: 1. Do not sign this Note before you read it. 2. You are entitled to a copy of this Note. 3. You may prepay the unpaid balance at any time without penalty.

**MASSACHUSETTS** RESIDENTS ONLY: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

**MISSOURI** AND **NEBRASKA** RESIDENTS: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF SUCH DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT BORROWER(S) AND THE LENDER AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**NEW JERSEY** RESIDENTS: The section headings of the Note are a table of contents and not contract terms. Portions of this Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Note, actions or practices (i) by which Lender is or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may be or will be taken by Lender unless prohibited by "applicable law" are permitted by New Jersey law.

**NEW YORK, RHODE ISLAND** and **VERMONT** RESIDENTS: Borrower understands and agrees that Lender may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If Borrower asks, Borrower will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. Borrower also understands and agrees that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to Borrower as a result of this application or for other legitimate purposes related to such loans.

**OHIO** RESIDENTS ONLY: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**WASHINGTON** RESIDENTS ONLY: Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

**WISCONSIN** RESIDENTS ONLY: For married Wisconsin residents, Borrower's signature confirms that this loan obligation is being incurred in the interest of Borrower's marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under A§ 766.59 of the Wisconsin statutes or court decree under A§ 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which Borrower is applying is granted, Borrower will notify Lender if Borrower has a spouse who needs to receive notification that credit has been extended to Borrower.

MEMBER ID OF BORROWER & CO-BORROWER (if any)
BY: LENDINGCLUB BANK, NATIONAL ASSOCIATION
ATTORNEY-IN-FACT FOR BORROWER and CO-BORROWER (if any)
(SIGNED ELECTRONICALLY)

# Exhibit C

Received S&A 02/21/2025

Exhibit C


 Gmail

Chris Lazzaro <chrisflazzaro@gmail.com>

## Initial Letter
7 messages

**Robert Kayvon** <RobertK@scott-pc.com>
To: "chrisflazzaro@gmail.com" <chrisflazzaro@gmail.com>

Mon, Jan 13, 2025 at 11:58 AM

Please see attached.


Sincerely,


Robert Kayvon, Esq.

Attorney – CA

Scott & Associates

P.O. Box 115220

Carrollton, TX 75011

626-657-6019


This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

_____ CONFIDENTIALITY
This email message and any attachments hereto are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email message, you are hereby notified that any dissemination, distribution or copying of this email message, and/or any attachments hereto, is strictly prohibited. If you have received this email message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any attachments hereto and any printout hereof. '. If the disclaimer can't be applied, attach the message to a new disclaimer message.

📎 **190558611_Lazzaro _DML-001GCA (D1).pdf**
150K


**Robert Kayvon** <RobertK@scott-pc.com>
To: "chrisflazzaro@gmail.com" <chrisflazzaro@gmail.com>

Mon, Jan 13, 2025 at 11:59 AM

Also extension to file answer granted for 30 days.


Sincerely,


Robert Kayvon, Esq.

Attorney – CA

Scott & Associates

P.O. Box 115220

Carrollton, TX 75011

626-657-6019


[Quoted text hidden]
[Quoted text hidden]

---

**Chris Lazzaro** <chrisflazzaro@gmail.com>
To: Robert Kayvon <RobertK@scott-pc.com>

Mon, Jan 13, 2025 at 2:21 PM

Robert,

Thank you for the 30 Day Extension, and I do appreciate your understanding.

I'd like you to review the attached Borrower Agreement that provides for arbitration of the claims outlined in the Complaint in Case Number 24CV07542.

Attachment #3 of the Complaint is a copy of a Loan Agreement and Promissory Note, which refers to additional terms outlined in a Borrower Agreement. Specifically, the Promissory Note states, "This note is subject to the Arbitration Agreement in the Borrower Agreement between the Lender and the Borrower." The Borrower Agreement was not included with the Promissory Note attached to the complaint. A copy of the Borrower Agreement is attached here for your reference.

Borrower Agreement, Section 16 states, "YOU AND WE ACKNOWLEDGE THAT WE AND YOU HAVE A RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER WE OR YOU ELECTS TO HAVE A DISPUTE DECIDED THROUGH ARBITRATION PURSUANT TO THIS ARBITRATION AGREEMENT. YOU AND WE NEVERTHELESS HEREBY KNOWINGLY AND VOLUNTARILY WAIVE OUR RIGHTS TO LITIGATE CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER YOU OR US."

I did not opt-out of this Arbitration Agreement. Section 16(b) requires a written opt-out notice to have been mailed to LendingClub within 30 days of the acceptance of the Borrower Agreement.

Further, the assignment of this debt has no impact on the enforceability of the Arbitration Agreement. Please see Section 16(g), which states that the Arbitration Agreement shall survive "any transfer or assignment of any loan or Loan Agreements or any other promissory note(s)...."

Thus, I am requesting that the complaint be dismissed. Thereafter, we can discuss the potential settlement of the claims at issue.

Sincerely,

Chris Lazzaro
831-241-2738
[Quoted text hidden]

📄 lc-loan-document-190558611-PersonalBorrowerAgreement.pdf
95K

---

**Chris Lazzaro** <chrisflazzaro@gmail.com>
To: Robert Kayvon <RobertK@scott-pc.com>

Fri, Jan 24, 2025 at 10:49 AM

Robert,

Just following up here and seeing if you've had time to review and how you would like to proceed.

Chris Lazzaro
831-241-2738
[Quoted text hidden]

---

**Chris Lazzaro** <chrisflazzaro@gmail.com>
To: Robert Kayvon <RobertK@scott-pc.com>

Mon, Feb 3, 2025 at 3:11 PM

Just following up again. Seeing if you've had time to review and how you would like to proceed.
[Quoted text hidden]

---

**Robert Kayvon** <RobertK@scott-pc.com>
To: Chris Lazzaro <chrisflazzaro@gmail.com>

Tue, Feb 4, 2025 at 5:20 PM

Hello,

Sorry for the delay – still waiting on a response from our client regarding your request.



Sincerely,


Robert Kayvon, Esq.

Attorney – CA

Scott & Associates

P.O. Box 115220

Carrollton, TX 75011

626-657-6019


[Quoted text hidden]

---

**Chris Lazzaro** <chrisflazzaro@gmail.com>
To: Robert Kayvon <RobertK@scott-pc.com>

Thu, Feb 6, 2025 at 10:59 AM

Robert,

Thanks for the update. Your 30 day extension puts us to 2/12, next Wednesday. Please let me know here before then if your client is needing and allowing more time, or if I should go ahead with filing my prepared answer, attachments, and pleading.

Chris Lazzaro
831-241-2738
[Quoted text hidden]

<u>PROOF OF SERVICE</u>

I declare that:

1.      I am employed in the County of San Francisco, California. My business address is 50 California Street, 34th Floor, San Francisco, California 94111.

2.      I am over the age of eighteen years and not a party to the within cause.

3.      On February 12, 2025, I served the following document(s):

**NOTICE AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION;**

**DECLRATION OF CHRISTOPHER LAZZARO IN SUPPORT OF NOTICE AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

by Email and U.S. Mail in the respective manner(s) set forth below:

**Email:** by sending a true copy of said document(s) to the person(s) at the email address(es) set forth below before 5:00 p.m. or at a time after 5:00 p.m. if stated below.

**U.S. Mail:** by placing a true copy of said document(s) in envelope(s) sealed and addressed to the person(s) at the address(es) set forth below for deposit in the United States Postal Service at the business address stated above. I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, all documents placed for mailing are posted as postage-paid First Class Mail and deposited with the United States Postal Service on the same date during regular business hours.

| | |
|---|---|
| Mr. Robert Kayvon<br>Scott & Associates<br>PO Box 115220<br>Carrollton, TX 75011<br>Email: robertk@scott-pc.com | |

I DECLARE UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 12, 2025 at San Francisco, California.

Marglyn Paseka

12



U.S. POSTAGE PAID
FCM LG ENV
SANTA ROSA, CA 95404
FEB 12, 2025

$12.10

S2324N507429-13

75011

Retail

RDC 99

CERTIFIED MAIL

Received S&A 02/21/2025

9589 0710 5270 2521 1886 53

RETURN RECEIPT
REQUESTED

Chrissba
1202 Vallejo St.
Santa Rosa, CA 95404

Scott & Associates
Attn: Robert Kaynon
P.O. Box 115220
Carrollton, TX 75011

BARRON & NEWBURGER, P.C.

## **CERTIFICATE OF SERVICE**

I, Timothy P. Johnson, do hereby certify that the Request for Judicial Notice ISO Motion to Dismiss the Complaint by Defendant Scott & Associates, PC and [Proposed] Order was served this 15th day of May, 2025, on all parties and counsel of record via the Court's ECF system.

_/s/Timothy Johnson_____
TIMOTHY P. JOHNSON

REQUEST FOR JUDICIAL NOTICE                    25-cv-03566-CRB