IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LAZZARO,<br>  Plaintiff,<br>  v.<br>ACCELERATED INVENTORY MANAGEMENT, LLC, et al.,<br>  Defendants. | Case No. 25-cv-03566-CRB<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Plaintiff Christopher Lazzaro alleges that Defendants Accelerated Inventory Management, LLC, Scott & Associates, and Robert Kavyon violated the Fair Debt Collection Practices Act and California law in their attempts to collect on a debt that he owed. The core of Lazzaro's claims is that a notice that Scott & Associates sent on AIM's behalf was invalid, though he also asserts that Defendants collectively misled and harassed him in their collection efforts. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court, having determined this matter suitable for resolution without argument under Civil Local Rule 7-1(b), hereby **GRANTS** Defendants' motion with prejudice.

I.   **BACKGROUND**

Christopher Lazzaro took out a loan from LendingClub Bank that resulted in a $4,000 loan debt. Compl. (dkt. 1) ¶ 52. AIM acquired this debt, which it sought to enforce against Lazzaro by way of Scott & Associates (a corporation) and Robert Kavyon (an individual who works for Scott). See id. ¶¶ 43–45, 52, 60, 67, 72. In February 2024, Scott mailed Lazzaro a letter in an unmarked envelope explaining that he had an

outstanding debt and providing pathways for him to dispute or resolve the debt.  Id. ¶¶ 46, 84; Feb. 2024 Letter (dkt. 1-2, Ex. B).  In April 2024, Scott mailed Lazzaro an intent-to-sue notice in an unmarked envelope.  Compl. ¶ 67; Apr. 2024 Letter (dkt. 1-2, Ex. D).  With respect to the April 2024 letter, Lazzaro alleges that he either did not receive it or threw it away without opening it.  Compl. ¶ 67.  He does not allege that he read, received (or did not receive), or threw away the February 2024 letter.

After Lazzaro failed to respond to the letters from Scott, AIM sued Lazzaro in California state court in December 2024, serving Lazzaro on December 17.  Id. ¶¶ 1–2, 53; California Compl. (dkt. 1-2, Ex. F).  Kavyon then attempted to settle the lawsuit, sending several emails in March 2024.  Compl. ¶ 70; Kavyon Emails (dkt. 1-2, Ex. G).  Various disputes have arisen from the litigation—including whether it belongs in arbitration rather than court—but those disputes are irrelevant to this lawsuit.

Lazzaro asserts ten causes of action against Defendants:

- Count 1:  That Defendants violated 15 U.S.C. § 1692g(a) by sending a "single senderless envelope … without follow-up, designed to resemble junk mail."  Compl. ¶¶ 86–94.

- Count 2:  That Defendants violated 15 U.S.C. § 1692e(10) and California Civil Code section 1788.10(f) by "vaguely threatening litigation without specification" and making "baseless warnings" of costs.  Id. ¶¶ 95–97.

- Count 3:  That Defendants violated 15 U.S.C. § 1692f by "filing and serving a premature lawsuit days before Christmas … without providing federally required notice."  Id. ¶¶ 98–99.

- Count 4:  That Defendants violated California Civil Code section 1788.15(a) by "filing and serving a premature lawsuit without providing federally required notice."  Id. ¶¶ 100–01.

- Count 5:  That Defendants violated 15 U.S.C. § 1692e(5) "by sending settlement emails … threatening arbitration fees."  Id. ¶¶ 102–03.

- Count 6:  That Defendants violated California Civil Code section 1788.13(e) by "falsely claiming prior notices justified their premature lawsuit."  Id. ¶¶ 104–05.

- Count 7:  That Defendants violated 15 U.S.C. § 1692d "by orchestrating a calculated scheme of deceptive notices and premature lawsuit service days before Christmas, amidst Plaintiff's family and 4-year-old son."  Id. ¶¶ 106–07.

- Count 8:  That Defendants violated California Civil Code section 1788.17 with the same "calculated scheme" as in Count 7.  Id. ¶¶ 108–09.

2

- Count 9: That Defendants intentionally inflicted severe emotional distress through "deceptive anonymous notices," "coercive settlement offers with baseless threats," and "a premature lawsuit [served] days before Christmas, with Plaintiff's family and 4-year-old son present." Id. ¶¶ 110–13.

- Count 10: That Defendants' conduct warrants punitive damages. Id. ¶¶ 114–17.

Defendants AIM and Scott now move to dismiss for failure to state a claim on which relief can be granted.[1] AIM Mot. (dkt. 19); Scott Mot. (dkt. 16); see Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept the plaintiff's "allegations as true and construe them in the light most favorable to" the plaintiff, but it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

Though Lazzaro asserts ten claims, the legal analysis for the eight statutory claims (Counts 1–8) and the IIED claim (Count 9) overlap significantly.[2] First, Lazzaro's claims mostly stem from his assertion that the February 2024 letter was inadequate notice. See Compl. ¶¶ 87 (alleging that the letter was inadequate notice under 15 U.S.C. § 1692g(a)), 96 (alleging that the lack of adequate notice made the April 2024 intent-to-sue letter false or deceptive), 99 (alleging that AIM's state-court lawsuit was premature without adequate notice), 101 (alleging the same), 103 (alleging that Kavyon's May 2025 settlement emails

---

[1] Lazzaro was initially unable to serve Defendant Kavyon, so the Court granted Lazzaro's motion for alternative means of service. Order re Alt. Serv. (dkt. 15). Kavyon has not yet responded to the Complaint, and Lazzaro has filed a motion for entry of default judgment. Mot. for Default Judgment (dkt. 37). Briefing on that motion is ongoing.

[2] California law does not provide a standalone cause of action for punitive damages, so the Court dismisses Count 10. Reynolds v. Shure, 148 F. Supp. 3d 928, 935 (E.D. Cal. 2015).

were unlawful threats because the lawsuit was defective for lack of notice), 105 (alleging the same), 107 (alleging that, because the lawsuit was premature, its filing was unlawful harassment), 109 (alleging substantially the same), 111 (alleging substantially the same). The Court rejects this assertion, and this goes most of the way toward resolving all Lazzaro's claims. But to the extent that his claims of deceptive and harassing conduct can survive even if the notice (and the intent-to-sue letter, the lawsuit, and the settlement emails) was proper, those claims independently fail.

### A. Sufficiency of February 2024 Notice

The Fair Debt Collection Practices Act requires debt collectors to send consumers written notice of the amount of debt owed and the name of the creditor, along with an explanation of the consumer's right to dispute the debt, the procedure for doing so, and the consequences of failing to do so. 15 U.S.C. § 1692g(a). Scott sent Lazzaro a letter in February 2024 that contained the statutorily prescribed language. See Feb. 2024 Letter.

Lazzaro suggests (though he does not expressly allege) that he either did not receive or did not open the February 2024 letter. See Compl. ¶¶ 46, 84; Feb. 2024 Letter. Legally, that does not matter. The FDCPA "requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor." Mahon v. Credit Bureau of Placer Cnty., Inc., 171 F.3d 1197, 1201 (9th Cir. 1999). Lazzaro tries to distinguish Mahon on its facts—the creditor in Mahon sent multiple letters, whereas Scott sent only the February letter—but the court's holding could not be clearer: "The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor." Id. Mahon certainly forecloses Lazzaro's argument that the FDCPA requires a debt collector to ensure that the consumer actually open and read the notice.

Lazzaro's remaining argument is that Scott's February 2024 letter "resembl[es] junk mail" and therefore violates the statute. To be sure, courts have interpreted § 1692g(a) to require that a debt collector "convey[] effectively" the statutorily required notice. Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988). Thus, for

4

example, a debt-collection letter containing other messages that either "overshadow[] or contradict[]" the § 1692g(a) notice might be misleading to the "least sophisticated debtor" and therefore inadequate. Id.; see also Voris v. Resurgent Cap. Servs., L.P., 494 F. Supp. 2d 1156, 1160 (S.D. Cal. 2007) (debt-collection letter in envelope labeled "You are Pre-approved*  See conditions inside" found misleading). At the same time, though, even the least sophisticated debtor is presumed to have "a basic level of understanding and willingness to read with care." Gonzalez v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1062 (9th Cir. 2011). This, of course, implies that the least sophisticated debtor is expected to read a debt-collection notice in the first place. That is exactly where Lazzaro's argument falters—he never even read the February 2024 letter. And his argument that the plain white envelope was misleading is both unsupported by case law (which focuses on affirmatively misleading information) and undercut by the FDCPA itself (which prevents debt collectors from indicating on the envelope that a letter is sent for the purpose of debt collection, 15 U.S.C. § 1692f(8)).

Neither of Lazzaro's attempts to minimize the impact of the February 2024 letter hold water. The letter was a valid notice of a debt under § 1692g(a). Accordingly, Lazzaro's first count—for a violation of that provision—fails. So do the rest of his claims to the extent that they rely on his assertion that the notice was inadequate. His claims that the state-court lawsuit was premature because Defendants had never sent valid notice of his debt, or that further communications were misleading or harassing because Defendants could not actually file a lawsuit or pursue other remedies without valid notice, necessarily fail in light of the conclusion that the February 2024 letter was a valid § 1692g(a) notice. See Compl. ¶¶ 96, 99, 101, 103, 105, 107, 109, 111.

### B. Allegedly Deceptive Conduct

Lazzaro's sole deception-based allegation that is not inextricably tied up in the validity of the February 2024 letter is that an isolated disclaimer from that letter was misleading. That disclaimer reads: "At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." Id. ¶ 64. Lazzaro

5

contends that the disclaimer "could reasonably be interpreted as implying that an attorney <u>will</u> review the account in the future, suggesting an impending escalation of collection efforts, including potential legal action." Id. But that is actually true, not misleading. And in any case, courts encourage the use of the exact disclaimer here to prevent consumers from believing that an attorney had already reviewed and approved the debt collection letter. See <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d 360, 365 (2d Cir. 2005). This basis for Lazzaro's deception-based claims therefore fails.

### C. Allegedly Harassing Conduct

Likewise, Lazzaro's sole allegation of harassment untethered from the validity of the February 2024 letter is that the timing of the service of the state-court suit (eight days before Christmas, on December 17, 2024) was inherently harassing and abusive. The Court is aware of no case law that prevents process servers from working in the weeks leading up to or following holidays, however stressful or disruptive that may be to those who are served. Though unpleasant, serving a defendant with a lawsuit right before a major holiday is not "extreme and outrageous conduct" for purposes of Lazzaro's IIED claim, see <u>Chang v. Lederman</u>, 172 Cal. App. 4th 67, 86 (2009), or harassment as defined in 15 U.S.C. § 1692d and incorporated into state law by California Civil Code section 1788.17. This basis for Lazzaro's harassment-based claims therefore fails.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss with prejudice. In light of Lazzaro's allegations regarding the February 2024 letter—namely, that it contained the information required by the FDCPA, that it was sent, and that it did not contain any affirmatively misleading information—his notice-based claims are futile, and leave to amend is not appropriate. See <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" (citation omitted)). Similarly, because his claims of deception and harassment are so closely connected to his notice-based claims—with the isolated

6

1 | exceptions discussed above—those claims are also futile and may be dismissed with
2 | prejudice.

3 | **IT IS SO ORDERED.**

4 | Dated: July 7, 2025



CHARLES R. BREYER
United States District Judge